Argued and submitted September 12, affirmed in part and reversed and remanded in part on appeal; on cross-appeal, reversed and remanded with instructions November 21, 1984, reconsideration denied January 25, petitions for review denied March 19, 1985 (298 Or 822)

HACKETT,
*Appellant - Cross-Respondent,*

*v.*

ALCO STANDARD CORPORATION et al,
*Respondents,*
WESTERN FOOD EQUIPMENT CO.,
*Respondent - Cross-Appellant.*

(TC 82-1480; CA A29553)

691 P2d 142

Martin E. Stone, Coquille, argued the cause for appellant - cross-respondent. With him on the briefs was Slack, Stone and Gillespie, Coquille.

Richard W. Butler, Eugene, argued the cause for respondents Alco Standard Corporation, Alco Food Service Equipment Company, and The Broaster Company. On the brief were Patrick J. Kouba, and Atherly, Butler & Burgott, Eugene.

I. Franklin Hunsaker, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were Douglass M. Hamilton, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff was injured by the explosive escape of steam and boiling fluid from a Broaster machine, used for deep fat frying of chicken, while he was cleaning it. He brought this action against the manufacturer, The Broaster Company (defendant), and its parent companies, Alco Standard Corporation and Alco Food Service Equipment Company, alleging that the Broaster was dangerously defective because of inadequate warnings on the machine. Those parties alleged affirmatively that plaintiff was contributorily negligent. Plaintiff later amended his complaint to add the distributor, Western Food Equipment Co. Western failed to appear, and a default judgment was taken against it. The trial court directed a verdict for the two parent companies. The issues of defendant's liability, the parties' comparative fault and total plaintiff's damages were submitted to the jury, which found that defendant was not at fault and therefore did not reach the other issues. Plaintiff appeals from the resulting judgment for defendant and the parent companies. Western cross-appeals from the default judgment against it and from the trial court's refusal to set the judgment aside.

The relief plaintiff seeks on appeal is a reversal and remand as to the parent companies as well as defendant. However, plaintiff makes no assignments of error pertaining to the directed verdict for the parent companies. He nevertheless argues:

"Plaintiff acknowledges that no such assignment appears in his opening brief, however, plaintiff submits that this Court may take notice of errors of law apparent on the face of the record. Rule 7.19 of *Rules of Appellate Procedure.* On the face of the record it is clear that the trial court erred in granting defendants' Motion. Defendants' Answer to Amended Complaint admits that in the course of their business 'defendants' (Alco Standard Corporation, Alco Food Service Equipment Company and The Broaster Company) manufactured and sold the subject broaster. The trial court's ruling was erroneous and this error is evident on the face of the pleadings. If this matter is returned for a new trial, all three defendants should remain as parties."

Nothing on the face of the record—or anywhere subcutaneously—makes it apparent to us that the directed

verdict was erroneous. Although an assignment and a supporting argument might have demonstrated error, the face of the record does not. The only thing that is apparent on the face of anything is that plaintiff did not make an assignment of error which he now thinks would have been well taken, but that is not the kind of error ORAP 7.19(5) says that we may review. The judgment for the two parent companies is beyond our inquiry and must be affirmed.

Plaintiff's first assignment of error is that the trial court erred by allowing defendant's pre-trial "motion in limine" to exclude evidence of actions by defendant to change the warnings on Broaster machines.[1] Those actions were taken after the manufacture and sale of plaintiff's machine but before plaintiff was injured. OEC 407 provides in relevant part:

"When, *after an event,* measures are taken which, if taken previously, *would have made the event less likely to occur,* evidence of the subsequent measures is not admissible to prove negligence or culpable conduct *in connection with the event.*" (Emphasis supplied.)[2]

Plaintiff contends that OEC 407 is inapplicable by its terms to this situation, because the "event" to which the rule refers is the accident that injured plaintiff and the remedial measures were taken *before* that event occurred. Defendant argues that, in product liability cases, the word "event" in OEC 407 should be construed as referring to the marketing of a defective product rather than or in addition to the later incident that directly produced an injury and that post-marketing efforts to correct a defect should be protected from trial disclosure by the rule even if those efforts precede the injurious incident.

In *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 189, 421 P2d 370 (1966), the court said of the common law predecessor of OEC 407:

---

[1] Plaintiff made the necessary offer of proof during the proceedings.

[2] There is a split of authority in other jurisdictions over whether common law or codified rules excluding evidence of post-accident remedial measures are applicable in products liability cases. The Oregon Supreme Court left that question open in *Phipps v. Air King Manufacturing,* 263 Or 141, 143 n 1, 501 P2d 790 (1972). Because we decide this case on other grounds, we do not reach that question. Our discussion of plaintiff's first assignment of error assumes *arguendo* that OEC 407 could apply here.

"It is the rule in this state, and in most other jurisdictions that common law negligence may not be proved by the introduction of evidence that *subsequent to the accident* in question defendant made improvements or repairs to the instrumentality that caused the injury." (Emphasis supplied; footnotes omitted).

*See also* McCormick, Evidence, § 275 (2d ed Cleary 1972). Indeed, in negligence cases, the accident is the only *possible* event that subsequent remedial efforts *can* follow.

■ ■ We do not agree with defendant that the word "event" in OEC 407 can or should be construed to mean one thing in negligence cases and another thing in product liability cases. Defendant offers no argument based on authority or on the language of the rule or its history to support such a construction. Defendant's argument turns instead on considerations of policy and the practical relationship between evidence of remedial measures and product manufacturing and marketing. Although defendant's points are logical as abstractions, they do not persuade us that we should change the historical understanding and application of an evidentiary rule because the rule as it has been understood and applied does not fit the facts before us. Contrary to defendant's intention, its arguments *may* illustrate that the rule is not adaptable to product liability cases at all. However, as we have noted, *see* note 2, *supra,* we do not reach that question. We hold that the "event" here was the accident that injured plaintiff rather than anything that occurred in connection with the manufacture and marketing of the machine. Because the evidence pertained to measures that predated the relevant event, it is not inadmissible under OEC 407.

Defendant contends, as alternatives to its arguments based on OEC 407, that the evidence was irrelevant, that its exclusion can be upheld as an exercise of the trial court's discretion under OEC 403 and that, in any event, the exclusion of the evidence was harmless to plaintiff. Defendant's relevancy argument is incorrect, and it does not warrant discussion.[3] The OEC 403 argument is also incorrect, but it does require attention. OEC 403 provides:

---

[3] Some of the points in the relevancy argument are similar or identical to points defendant makes in its harmless error argument, which is discussed below.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Defendant argues that the trial court *could* properly have excluded the evidence pursuant to that rule; that, "although reference was made" in the proceedings on the motion *in limine* "to the rule of evidence pertaining to subsequent changes, the motion was based on the argument that because feasibility was not contested in the case" the evidence would be prejudicial to defendant; and that "[t]he only conclusion supported by the record is that, in ruling on the motion in limine, the court weighed the probative value of the evidence against the possibility of prejudice, and decided to exclude it."

We disagree with defendant's characterization of the proceedings on the motion. It is absolutely clear that the basis for the court's ruling was that the evidence was inadmissible under OEC 407. Moreover, even if defendant's understanding of the record were correct, the ruling still could not be sustained. If the prejudicial impact versus the probativeness of relevant evidence can ever be weighed in the vacuum of a pre-trial proceeding on a motion to exclude the evidence, this was not the occasion.

Defendant's argument that the court's error in excluding the evidence was harmless is two-pronged. The first point urged is that the evidence was cumulative. Plaintiff produced testimonial evidence that the language, color and location of the warnings on the machine could have been different. Defendant did not refute the feasibility of the alternative warning format that plaintiff's witness testified would have been possible and better. Defendant argues that the excluded evidence was simply redundant of the uncontroverted evidence that was admitted. We disagree. The graphic nature of the excluded evidence, as well as its source, might well have been far more persuasive to the jury than the sparse testimonial evidence plaintiff did offer. *Compare Van Gordon v. PGE Co.,* 59 Or App 740, 652 P2d 817 (1982) (separate opinion of Van Hoomissen, J); *rev'd and remanded* 294 Or 761, 662 P2d 714; *on remand,* 64 Or App 135, 667 P2d

532; *remanded* 295 Or 811, 670 P2d 1026 (1983); *on remand,* 67 Or App 290, 677 P2d 739, *rev allowed* 297 Or 339 (1984).

The second aspect of defendant's harmless error argument is more complex. Defendant reasons that plaintiff's evidence, including his evidence of possible alternative warning formats, was weighed against defendant's evidence by the jury, "[t]he issue of the adequacy of the warning was fully and fairly litigated," the jury found that the warnings were not defective and, therefore, "[t]he excluded evidence could have permissibly shown *only* that [defendant] took steps to improve an already adequate warning." (Emphasis defendant's.) Defendant's reasoning is circular. The fact that the jury may have found the warnings adequate without having the excluded evidence before it does not mean that, had the evidence been admitted, the jury could only have regarded it as proving that defendant took steps to improve already adequate warnings. The evidence was relevant to *whether* the warnings *were* adequate. Its exclusion was prejudicial error.[4]

One of plaintiff's two additional assignments of error warrants no discussion. The other is that the trial court erred by denying plaintiff's motion to strike defendant's contributory negligence defense. Defendant alleged that plaintiff's injuries

"were caused substantially by plaintiff's own fault in that he operated the product in direct contravention of the instructions contained in the instruction manual; he failed to heed the warning on the equipment itself; he failed to read the instruction booklet concerning the operation of the broaster; and he failed to keep a proper lookout for his own safety."

---

[4] Defendant also attempts to bolster its argument with the following statement from plaintiff's brief:

"Defendants * * * argue that a jury could possibly misuse evidence of subsequent remedial measures and reach an immediate conclusion that the product is defective and that defendants are liable. Plaintiff submits that jury misuse of such evidence can be avoided by appropriate limiting instructions to the effect that subsequent remedial repairs or improvements do not, by themselves, prove defectiveness."

So far as the parties tell us, that statement is meant strictly as argument, and it does not refer to any procedural event that occurred at trial.

The only ultimate fact that evidence of remedial measures *can* prove is that the unremedied condition was deficient. We question plaintiff's suggestion that, as a general proposition, *admissible* evidence of remedial measures *cannot* be independently sufficient to prove an antecedent defect.

Plaintiff acknowledges that, in *Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 642 P2d 624 (1982), the court held that contributory negligence can be asserted as a comparative fault defense in product liability cases. However, the court excepted contributory negligence consisting of "unobservant, inattentive, ignorant, or awkward failure of the injured party to discover the defect or to guard against it as is taken into account in finding the particular product dangerously defective." 292 Or at 610. Plaintiff argues that the negligence alleged by defendant comes within that exception.[5]

Although plaintiff moved to strike the entire affirmative defense, the only allegation that *could* come within the *Sandford* exception is that plaintiff "failed to heed the warning on the equipment itself." One of the inadequacies plaintiff's complaint ascribes to the warnings on the machine is that they were not conspicuous. He produced evidence that he did not see the warnings before the accident. A failure to *see* warnings because their location and other characteristics makes them difficult or impossible to see would appear to be the kind of negligent conduct that *Sandford* makes unavailable as a defense. However, the word "heed" is not synonymous with "see"; it connotes a response to a perception rather than the act of perceiving. It is of course impossible to respond to a perception that cannot be made. Nevertheless, on its face, defendant's allegation seems to be that plaintiff was negligent in his response to the warnings rather than in his failure to observe them. That is permissible *as an allegation* of contributory negligence under *Sandford.* Whether the allegation *should be submitted to the jury* is another question, which cannot be answered until the evidence is presented on remand. If the evidence is sufficiently conclusive to enable the trial court to direct a verdict for plaintiff on the question of whether he saw the warnings, his failure to heed them *could not* be a factual issue, and his failure to see them would not be available as a defense under *Sandford.*[6]

---

[5] Defendant contends that we need not address plaintiff's argument, because the jury found that defendant was not at fault and did not reach the contributory negligence issue. Defendant would be correct if we were affirming the judgment. However, we are not, and the question is likely to arise on retrial.

[6] Although the relevant language in *Sandford* is relatively clear, we confess to some difficulty in understanding how the court intended it to be applied. In this case, plaintiff's failure to see the warnings would clearly be the kind of omission that could

In its cross-appeal, Western assigns error to the trial court's refusal to set aside the default judgment against it and to enter judgment in its favor. Service was made on Western's president and registered agent. According to his affidavits, which we do not understand plaintiff to argue are factually incorrect, he did not refer the summons and complaint to Western's insurer because, *inter alia:*

> "In my only prior experience with a lawsuit against [Western] and Alco Standard and The Broaster Company, Alco Standard and The Broaster Company assumed responsibility for the defense of [Western]. It was my real belief, although I now know it was a mistaken one, that in this case, too, [Western's] interest would be protected by Alco Standard Corporation and The Broaster Company."

Plaintiff took a default judgment against Western. Shortly after Western discovered that fact, it notified its insurer. Western's initial motion to set aside the judgment was then filed, together with an answer and an affirmative defense that the Statute of Limitations barred the action as to Western.

Western contends that its president's failure to take timely action after being served was excusable neglect and that the trial court therefore should have set the judgment aside pursuant to ORCP 71B. The Supreme Court's and our applications of the term "excusable neglect" in ORCP 71B and its predecessor, ORS 18.160, have followed a somewhat undefined course, and recent decisions have turned on fine distinctions between or disregard for other recent decisions.

■ A compendium and discussion of the principal decisions appears in *Reitz v. Coca-Cola,* 36 Or App 487, 584 P2d 791 (1978). We held in *Reitz* that the defendant's president and registered agent was excusably negligent when, after being personally served, he handed the papers to a subordinate without giving clear instructions about their nature or what to do with them and without taking any follow-up measures to assure that appropriate action had been taken.

---

be "taken into account in finding the * * * product dangerously defective." However, a factfinder could equally well regard plaintiff's failure to see the warnings as demonstrating that he was negligent and, therefore, that the product was *not* dangerously defective. It is also conceivable that a factfinder could believe that plaintiff did not see the warnings because of *both* their inconspicuousness and his negligence. Why such negligence cannot be considered as a defense or as a factor in apportioning fault is not apparent from anything except the fact that *Sandford* says so.

The facts here are different, but not really distinguishable. In both cases, a high officer and registered agent of a corporation acted on a misapprehension that someone else would take care of matters; in both instances the responsible officer's belief was wrong and his failure to act was negligent, but no more inexcusably so in this case than in *Reitz. Compare Lowe v. Institutional Investors Trust,* 270 Or 814, 529 P2d 920 (1974). We conclude that the trial court erred by refusing to set aside the judgment against Western.[7]

Western argues that, in addition to setting aside the default judgment, the trial court should have entered judgment in Western's favor. The basis for Western's argument is that, when a judgment for codefendants "would necessarily have caused the defaulting defendant to have prevailed," *Hiatt v. Congoleum Industries,* 279 Or 569, 572, 569 P2d 567 (1977), the defaulting defendant is entitled both to relief from default and to the entry of a favorable judgment. *See State ex rel Everett v. Sanders,* 274 Or 75, 544 P2d 1043 (1976). Because we reverse and remand the judgment for The Broaster Company, Western cannot be entitled to judgment at this time, and we need not decide whether the judgment in favor of its codefendants would otherwise have necessarily resolved plaintiff's allegations against Western in the latter's favor.

On the appeal, reversed and remanded as to defendant The Broaster Company and affirmed as to defendants Alco Standard Corporation and Alco Food Service Equipment Company; on the cross-appeal, reversed and remanded with instructions to set aside the judgment against defendant Western Food Equipment Co. and for further proceedings.

---

[7] Our standard of review has been murkily defined. Although the theory is that we review denials of motions to set aside default judgments for abuse of discretion, the Supreme Court has said that that discretion "is controlled by fixed legal principles." *Coleman v. Meyer,* 261 Or 129, 134, 493 P2d 48 (1972). We said in *Reitz* that "the question in each case is whether in light of the applicable legal principles the decision of the trial court was reasonable." 36 Or App at 492. Notwithstanding the stated standard of review, a body of case law now exists that may require, under certain circumstances, that default judgments be set aside as a matter of law rather than of discretion. We need not resolve that problem now.