Argued and submitted February 8, resubmitted In Banc May 10, affirmed July 19,
reconsideration denied September 8, petition for review denied October 26, 1989
(308 Or 466)

WALKER,
*Respondent,*

*v.*

ALLIED FIDELITY INSURANCE CO. et al,
*Defendants,*

*and*

KOFORD-CHAPMAN INSURANCE, INC.,
*Appellant.*

(16-87-05639; CA A47192)

777 P2d 990

James B. Ehrlich, Eugene, argued the cause for appellant. With him on the briefs was Larry O. Gildea, Eugene.

Allen E. Gardner, Eugene, argued the cause for respondent. With him on the brief was Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

GRABER, J.

Edmonds, J., dissenting.

## GRABER, J.

Defendant Koford-Chapman Insurance, Inc., appeals from the entry of a judgment by default in favor of plaintiff. It assigns as error the trial court's denial of its motion for relief from the order of default. We affirm.

Defendant is an insurance broker; plaintiff's complaint seeks to recover damages for an allegedly improper cancellation of liability coverage for plaintiff's assignee. Koford, defendant's registered agent, was served with the summons and complaint on July 2, 1987, at defendant's office in Junction City. As ORCP 7C(3)(a) requires, the summons contained this notice:

> "NOTICE TO DEFENDANT:
> "READ THESE PAPERS
> "CAREFULLY!

> "You must 'appear' in this case or the other side will win automatically. To 'appear' you must file with the Court a legal paper called a 'motion' or 'answer.' The 'motion' or 'answer' must be given to the Court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the Plaintiff's attorney or, if the Plaintiff does not have an attorney, proof of service on the Plaintiff.

> "If you have questions, you should see an attorney immediately."

The evidence of what occurred after service comes from affidavits of several of defendant's employes. Koford states that he decided, after receiving the papers, that defendant's Springfield office should handle the matter. However, he waited about a month before sending the summons and complaint to Nokes, who was in charge of that office. When he did send them, he neither instructed Nokes what to do nor indicated what he had done. Nokes assumed that Koford had already sent copies to defendant's insurance carrier. According to Koford, several weeks later he called Nokes, discovered that nothing had happened, and told Nokes to send the summons and complaint to defendant's liability carrier. Nokes then told Corwin, a secretary at the Springfield office, to send the papers to the carrier. Several days later, she sent them to an insurance association in Portland, rather than to the carrier in New York. Only after she learned of the mistake did she

send the papers to the proper place. By then the order of default had been entered.

The affidavits are not consistent as to the times involved, but the parties do not treat the inconsistencies as significant, to the extent that they recognize them at all. Nokes states that he received the papers from Koford some time in July and that Koford called him several weeks later, but he also states that the call was at the end of July. Corwin states that Nokes told her on July 31 to mail the papers to the carrier and that her first mailing was on August 4 or 5. Those dates are inconsistent with Koford's statement that he waited about a month before mailing the papers to Nokes and then waited another several weeks before calling to find out what had happened. We will assume that Nokes' and Corwin's chronology is correct, because it better fits the documentary evidence.

Even under that version, defendant's employes showed no concern about complying with the 30-day deadline for appearing in the action. They had enough time after they learned from Koford that he had done nothing to have called defendant's liability carrier, in time for the carrier to avoid the default, but they did not do so. ORCP 71B(1)(a) permits the trial court, in its discretion, to grant a defendant relief from a judgment by default if the defendant can show "mistake, inadvertence, surprise, or *excusable* neglect." (Emphasis supplied.) The court may also set aside an order of default on the same grounds or, perhaps, on a showing of "good cause."[1] *Rajneesh Foundation v. McGreer,* 80 Or App 168, 173, 721 P2d 867 (1986), *rev'd on other grounds* 303 Or 139, 734 P2d 871, *on reconsideration* 303 Or 371, 737 P2d 593 (1987). In this case, however, the trial court could readily have found that defendant was *inexcusably* negligent and showed no good cause. The summons carried a clear warning of the effect of defendant's inaction. The prayer of the complaint—and the principal amount of the judgment—is $438,564.29. The trial court could conclude that it is not excusable for a businessperson to treat a matter of such magnitude in so cavalier a fashion.

---

[1] In December, 1986, the Council on Court Procedures adopted ORCP 69C, which explicitly permits the trial court to set aside an order of default for good cause shown. The change became effective after the events that led to the default order in this case and after the entry of that order.

Defendant argues that this was only the second complaint that Koford had received in his 25 years as registered agent and that he was inexperienced in dealing with such matters. That is all the more reason for him to have read the papers with care and to have sought legal or other appropriate assistance immediately. Inexperience is not an excuse for failing to seek the help of someone who is experienced. Certainly a person with 25 years in the insurance business should know the perils of ignoring a lawsuit. The 30-day period that the legislature has provided[2] was more than adequate for defendant, in the exercise of anything resembling reasonable diligence, to bring this action to the attention of its carrier and for the carrier to take the necessary steps to protect defendant's position. ORCP 7C(2).

Defendant relies on *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978), which it says is "comparable" to this case. In *Reitz*, the plaintiff served the president of the defendant corporation just as the president was leaving his office accompanied by one or two other people. The president had previously talked with the plaintiff's attorney and knew what the papers were about. He handed them to the corporate controller, who was standing nearby, and told him that it was "another Tinker case" and that he should take care of it. The controller thought that the papers related *to* the Tinker case and placed them in that file instead of forwarding them to the corporation's liability carrier. He had no previous experience with a summons and complaint. The trial court refused to set aside the ensuing default. We held that its action was an abuse of discretion.

The only significant similarity between *Reitz* and this case is that in each a corporate officer failed to transmit the summons and complaint to the carrier. In *Reitz*, the president gave what he believed were adequate instructions to the controller, who took what he thought was the proper action. The president knew what to do and thought that the controller would do it. He did not ignore the complaint. There was a

---

[2] Formerly, a defendant had only ten days to appear if served within the county where the action was commenced and 20 days if served elsewhere in the state. In 1977, the legislature changed the time to a uniform 20 days, if the defendant was served anywhere in the state. Or Laws 1977, ch 877, § 3. Two years later, the Council on Court Procedures and the legislature enacted the 30-day period when they adopted ORCP 7. Or Laws 1979, ch 284, § 9.

failure to communicate, but not a failure to act. In this case, Koford did *nothing* for an undetermined period and then sent the papers to Nokes with no suggestion that he expected Nokes to do anything. Nokes, not surprisingly, did nothing until he heard from Koford, and even then Nokes did not realize the seriousness of the matter and failed to take steps to avoid the default. This case is not a story of a good faith attempt to appear that went awry but of a disregard for the seriousness of the matter.[3]

Many, perhaps most, defaulted defendants could probably come up with stories as good as this one. If we were to reverse the trial court's refusal to set aside this default,[4] no default will be good if the defendant attacks it within a reasonable time. As a result, the time for appearance would not be 30 days, as the legislature has provided, but 30 days plus a reasonable time to set aside the default. We believe that plaintiffs should be able to rely on the legislature's determination of what is a reasonable time to appear and therefore affirm.[5]

Affirmed.

**EDMONDS, J.,** dissenting.

In *Hackett v. Alco Standard Corp.,* 71 Or App 24, 32-33, 691 P2d 142 (1984), *rev den* 298 Or 822 (1985), we said, in setting aside a default judgment:

"The Supreme Court's and our application of the term 'excusable neglect' in ORCP 71B and its predecessor, ORS 18.160, have followed a somewhat undefined course, and recent decisions have turned on fine distinctions between or disregard for other decisions.

"A compendium and discussion of the principal decisions appears in *Reitz v. Coca-Cola,* 36 Or App 487, 584 P2d 791 (1978). We held in *Reitz* that the defendant's president and

---

[3] The dissent also relies on *Hackett v. Alco Standard Corp.,* 71 Or App 24, 691 P2d 142 (1984), *rev den* 298 Or 822 (1985). In that case, the responsible person failed to act on the basis of a mistaken belief that the defendant's interests would be protected by a codefendant. Here, however, Koford's delayed and insufficient response was not based on a "misapprehension that someone else would take care of the matter." 97 Or App at 570. He simply kept the summons and complaint for nearly a month and then sent it on with no instructions to anyone to do anything.

[4] For a discussion of our standard of review of motions to set aside default judgments, *see Hackett v. Alco Standard Corp., supra* n 3, 71 Or App at 33 n 7.

[5] Defendant's other arguments are without merit.

registered agent was excusably negligent when, after being personally served, he handed the papers to a subordinate without giving clear instructions about their nature or what to do with them and without taking any follow-up measures to assure that appropriate action had been taken. The facts here are different, but not really distinguishable. In both cases, a high officer and registered agent of a corporation acted on a misapprehension that someone else would take care of matters; in both instances the responsible officer's belief was wrong and his failure to act was negligent, but no more inexcusably so in this case than in *Reitz*. *Compare Lowe v. Institutional Investors Trust,* 270 Or 814, 529 P2d 920 (1974)."

The majority would distinguish *Reitz* on the basis of Koford's failure to act.

"The only significant similarity between *Reitz* and this case is that in each a corporate officer failed to transmit the summons and complaint to the carrier. In *Reitz,* the president gave what he believed to be adequate instructions to the controller, who took what he thought was the proper action. The president knew what to do and thought the controller would do it. He did not ignore the complaint. There was a failure to communicate, but not a failure to act. In this case, Koford did *nothing* for an undetermined period and then sent the papers to Nokes with no suggestion that he expected Nokes to do anything."

In *Hackett,* however, the agent for service also did *nothing.* The defendant's president and registered agent was served but did not refer the summons and complaint to its insurer because of a mistaken belief that the defendant's interests would be protected by a codefendant. "Inaction" is not determinative of whether conduct constitutes inexcusable neglect under *Reitz.*

The majority also fails to consider that Koford did act within the thirty days. After service on July 2, 1987, Koford sent the papers to Nokes, manager of the branch of defendant that sold the policy, assuming that he would forward the papers to defendant's insurer. There was no established procedure for the handling of legal documents, and this was only the second summons and complaint Koford had seen in 25 years. Nokes testified that he received the papers sometime in July. In late July, Koford telephoned to check on the status of the matter (something the officer in *Reitz* never did) and discovered that Nokes had not acted. He directed Nokes

immediately to forward the papers. Corwin testified that she was told on *July 31* to mail the papers, but did not do so until August 4 or 5, by which time the default order had been entered.

What is determinative under *Reitz* is whether the responsible officer was under the misapprehension that someone else would take care of the matter. If that misapprehension is not unreasonable, then the overriding policy that every litigant ought to have his day in court and his rights and duties determined by a decision on the merits of the controversy should prevail in the spirit of justice. *See Wagar v. Prudential Ins. Co.,* 276 Or 827, 832, 556 P2d 658 (1976); *King v. Mitchell,* 188 Or 434, 442, 214 P2d 993, 216 P2d 269 (1950); *4F2C v. Pacific Health Facilities,* 90 Or App 288, 283, 752 P2d 1221, *rev den* 306 Or 101 (1988). Although Koford may have been negligent, his misapprehension that Nokes was taking care of the matter is no more inexcusable than the misunderstanding in *Reitz* or *Hackett.*