Argued and submitted March 30, reversed and remanded June 7, 2000

# M. R. WOOD
and Mary Wood,
husband and wife,
*Respondents,*

*v.*

# JAMES W. FOWLER CO.,
an Oregon corporation,
*Appellant.*

## (973636; CA A106029)

7 P3d 577

James M. Callahan argued the cause for appellant. With him on the briefs was Callahan & Shears, P.C.

Dennis L. Bartoldus argued the cause for respondents. With him on the brief was Philip A. Hingson.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from the trial court's denial of its motion to set aside a judgment of default. ORS 19.205(2)(c).[1] The dispositive issue is whether the trial court erred in determining that defendant had not established that its failure to appear was the product of "excusable neglect" within the meaning of ORCP 71 B(1)(a). We conclude that this case is materially indistinguishable from *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978), and, consequently, reverse and remand.

The material facts are uncontroverted. In late March 1997, plaintiffs' attorney sent a demand letter to defendant, asserting that defendant had committed trespass and timber trespass on plaintiffs' property. The letter stated that, if defendant did not respond within 20 days, plaintiffs would file suit. Defendant did not respond.

In July 1997, plaintiffs filed this action, alleging claims of trespass and timber trespass. On August 4, 1997, a deputy sheriff served the summons and complaint on a receptionist at defendant's office. The receptionist gave the complaint to James Fowler, defendant's president and registered agent. Fowler reviewed the complaint and decided that it should be transmitted to defendant's insurance agent "to be tendered to our liability carrier for defense." Consequently, Fowler gave the complaint to defendant's comptroller, Paul Beals, and told Beals to transmit the original summons and complaint to defendant's insurance agent.[2]

---

[1] This is the second time this case has been before us. On the first occasion, defendant appealed from the judgment of default, assigning error to the motion to set aside an *order* of default. We dismissed that appeal for lack of jurisdiction, citing *Gibbons and Gibbons*, 153 Or App 377, 956 P2d 1069, *recons den* 155 Or App 262, 964 P2d 1050 (1998). Even before that dismissal—and apparently in response to jurisdictional questions we raised during and after oral argument—defendant filed a motion with the trial court to set aside the judgment of default. That motion was timely in that it was filed "not more than one year" after defendant received notice of the entry of the judgment of default. ORCP 71 B(1). This appeal is from the denial of that motion.

[2] Both Fowler and Beals submitted affidavits in support of the motion to set aside the default judgment. Both confirmed that Fowler did, in fact, give the documents to Beals.

Beals's "ordinary" or "usual" practice was to give the original summons and complaint to a member of defendant's clerical staff with instructions to mail those documents to defendant's insurance agent. For unknown reasons, that did not occur in this case. As a result, defendant failed to file a timely responsive pleading and, on September 10, 1997, plaintiffs obtained an order of default against defendant.

On September 25, 1997, Beals telephoned defendant's insurance agent to ask about the status of the action and was told that the agent had never received any notice of the action. Beals then searched his office and found the original summons and complaint. Defendant immediately sent the summons and complaint to its insurance agent who, in turn, forwarded the documents to defendant's insurer.

On October 6, 1997, defendant filed a motion to set aside the order of default, along with an answer to plaintiffs' complaint.[3] Defendant contended that its failure to appear was the result of "inadvertence" or "excusable neglect" within the meaning of ORCP 71 B(1)(a). The court denied defendant's motion and, on December 12, 1997, entered a judgment of default. Defendant appealed from that judgment, and we ultimately dismissed that appeal in December 1998. *See* n 1 above. Meanwhile, however, in November 1998, defendant moved to set aside the judgment of default, again on grounds of "inadvertence" or "excusable neglect." After issuing a comprehensive letter opinion, the trial court denied that motion.[4] This appeal followed.

■     We begin with our standard of review. We review denials of motions to set aside default judgments for abuse of discretion. *See, e.g., Duvall v. McLeod*, 160 Or App 685, 690,

---

[3] Thus, defendant's motion was, by any definition, "accompanied by" the putative answer. ORCP 71 B(1). Consequently, this case does not implicate the issue addressed in *Duvall v. McLeod*, 160 Or App 685, 984 P2d 287, *rev allowed* 329 Or 527 (1999).

[4] The trial court traced, and attempted to rationalize, the tangled strands of case law in this area. Ultimately, the court concluded that the case was more analogous to *Mount v. Massachusetts Mutual Life Ins. Co.*, 103 Or App 156, 796 P2d 388 (1990), *rev dismissed* 311 Or 151 (1991), than to *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978), and *Hackett v. Alco Standard Corp.*, 71 Or App 24, 691 P2d 142 (1984), *rev den* 298 Or 822 (1985). Although we disagree with the court's conclusion, we acknowledge its thoughtful analysis.

984 P2d 287, *rev allowed* 329 Or 527 (1999); *Walters v. Kmart Corp.*, 149 Or App 65, 68, 942 P2d 286, *rev den* 326 Or 59 (1997). Nevertheless, that discretion is hardly unlimited—indeed, there may be no context in which we have so frequently reversed for abuse of discretion—and its contours are, in Judge Joseph's phrase, "murkily defined." *Hackett v. Alco Standard Corp.*, 71 Or App 24, 33 n 7, 691 P2d 142 (1984), *rev den* 298 Or 822 (1985). Perhaps as a result, our case law almost invariably reduces to fact-matching and analogy; *viz.*: "The facts pertaining to 'excusable neglect' in this case are similar to those in *Reitz* [or *Mount*] and so, by analogy, the denial of relief from default in this case must [or must not] be an abuse of discretion."[5] That, in essence, is the process we follow here.

■       ORCP 71 B(1) provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]"

That rule "is to be construed liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy." *King v. Mitchell*, 188 Or 434, 441-42, 214 P2d 993, 216 P2d 269 (1950) (construing predecessor statute). *See also Hiatt v. Congoleum Industries*, 279 Or 569, 579, 569 P2d 567 (1977) ("Ordinarily, if [a movant] presents reasonable grounds excusing his default, the courts are liberal in granting relief, for the policy of the law is to afford a trial upon the merits when it can be done without doing violence to the statute and established rules of practice that have grown up promotive of the regular disposition of litigation.").

■       The principal, and ultimately dispositive, issue on appeal is whether defendant's failure to appear was the product of excusable neglect.[6] Defendant argues that the circumstances here are materially indistinguishable from those in

---

[5] In that respect, "abuse of discretion" and "matter of law" review may converge in this context. *See Hackett*, 71 Or App at 33 n 7; *see also Hiatt v. Congoleum Industries*, 279 Or 569, 576, 569 P2d 567 (1977) ("If the appellate court reverses the trial court, it necessarily decides the issue as a matter of law.").

[6] Plaintiffs also contend that defendant did not act diligently after learning of the default; that they were prejudiced by defendant's delay; and that defendant

*Reitz* and *Hackett*. Plaintiffs counter that this case is more closely analogous to *Lowe v. Institutional Investors Trust*, 270 Or 814, 529 P2d 920 (1974), *Mount v. Massachusetts Mutual Life Ins. Co.*, 103 Or App 156, 796 P2d 388, *rev dismissed* 311 Or 151 (1990), and *Walker v. Allied Fidelity Ins. Co.*, 97 Or App 568, 777 P2d 990, *rev den* 308 Or 466 (1989). We agree with defendant.

We begin with *Lowe*, the earliest of the precedents that plaintiffs invoke. There, the plaintiff filed a suit to foreclose a lien and effected service on one of the defendant's executives, Bulfamante, who was authorized to accept service for the defendant. The defendant failed to appear, and the plaintiff obtained a judgment of default. Thereafter, the defendant moved to set aside the default judgment on grounds of "excusable neglect." In support of that motion, the defendant submitted an affidavit from Bulfamante in which he stated that he had no recollection of having been served with the complaint but that it was his "customary" practice on being served to forward legal process to the defendant's legal department. *Lowe*, 270 Or at 818. Bulfamante further averred that a search of the defendant's corporate files had not yielded the summons and complaint. The trial court denied the motion to set aside the default, and the Supreme Court affirmed:

> "The affidavit thus establishes only that Mr. Bulfamante has no recollection of having been served and that he has been unable to find the summons and complaint in his files or in the files of [defendant]. It is obvious that the affidavit does not establish any mistake, inadvertence or surprise and we conclude it is insufficient to establish excusable neglect. Indeed, it can be suggested that the affidavit shows inexcusable neglect." *Id.*

In *Hiatt*, the plaintiff served the defendant by serving the corporation commissioner and sending copies to the

---

should be precluded from pursuing this appeal by our jurisdictional dismissal of the earlier appeal. We reject each of those arguments without discussion and, like the trial court, focus on "excusable neglect."

Conversely, given our disposition, we do not reach, or decide, defendant's alternative argument that "excusable neglect" and "inadvertence" are substantively distinct grounds for relief under ORCP 71 B(1) and that defendant's failure to appear was the result of "inadvertence."

defendant's office in New Jersey by certified mail. Fridy, an employee of the defendant's mail room, signed for the certified letter. Thereafter, the defendant entered no appearance, and the plaintiff obtained a default judgment. After receiving notice of the default judgment, the defendant moved to set aside that judgment on grounds of excusable neglect. In support of that motion, defendant submitted affidavits from Fridy, the mail room employee, and other corporate employees:

> "[Fridy's] instructions were to forward any legal document to the legal department and it was his practice to do so. He was working the mailroom when the postoffice records state the complaint in plaintiff's action was received, but he has no recollection of receiving it or any other like document.
>
> "A member of [the defendant's] legal department stated that he investigated in the legal department and other departments. No one in [the defendant] had any knowledge of the lawsuit until he received the copy of the default judgment by mail from plaintiff's attorney." *Hiatt*, 279 Or at 574.

The trial court denied the motion to set aside the default judgment, and the Supreme Court reversed:

> "[T]he only evidence is that the summons and complaint were received by a part-time employee who had no memory of the incident. His instructions were to send such documents to the legal department and it was his practice to do so. For reasons not known, the documents were not received by the legal department. There is nothing implausible about such evidence. We regard these facts as amounting to a case of excusable neglect as a matter of law[.]" *Id.* at 577.

In so holding, the court, although acknowledging certain "similarities," explained that *Lowe* was materially distinguishable:

> "*Lowe* involved personal service, an event of greater impact than the receipt of a letter containing a summons and complaint in a mail room. The personal service was made upon an officer of the corporation who was assigned the duty of acting as the corporate agent to receive service.
>
> "We concluded in *Lowe* that a trial court could reasonably find that it was inexcusable negligence for a corporate

agent for service to have lost and have no memory or record of a summons and complaint personally served upon him. We conclude that is not comparable to having the contents of a letter lost between the mail room and the corporate legal room and the employee of the mail room having no memory of receiving or transmitting the letter or its contents." *Hiatt*, 279 Or at 578.

*Reitz* and *Hackett*, defendant's two principal precedents, followed. In *Reitz*, the plaintiff served a product liability complaint on the defendant's president and registered agent, McNutt. McNutt then handed the papers to the defendant's comptroller, Bohn, saying, "Here is another *Tinker* case. Take care of it."[7] *Reitz*, 36 Or App at 490. McNutt assumed that Bohn would either forward the papers to an industry association that had undertaken the defense of such matters or that, at least, the association had notice of the pendency of the action. However, Bohn understood McNutt's directive, "Take care of it," merely to mean that he should put the papers in a file that the company maintained on product liability litigation. In all events, the plaintiff obtained a judgment by default, and the trial court denied the defendant's motion to set aside the default judgment. *Id.* at 491.

We reversed, concluding that the circumstances established excusable neglect. In so holding, we noted that the circumstances were distinguishable from those in *Lowe* in that there was no uncertainty as to what happened to the papers after the registered agent, McNutt, had received them: "McNutt gave the papers to Bohn, an otherwise reliable employee who was responsible for the file on another pending products liability case and who was aware that the association handled such matters." *Id.* at 494. Thus, although McNutt "was negligent in failing to insure that the association was notified," that negligence was not "inexcusable." *Id.* at 495.

■ In *Hackett*, we explained *Reitz*'s significance. There, the plaintiff filed a products liability action against the product's manufacturer, its parent corporations, and the product's distributor. The complaint was served on the defendant distributor's president, who was also its registered agent, but

---

[7] "Tinker" was another product liability action against the defendant.

that defendant failed to appear. In moving to set aside the ensuing default judgment, the defendant distributor submitted an affidavit from its president stating that, given his only prior experience with similar product liability litigation, he had assumed that the manufacturer defendant and its parent corporations would assume the defense of the matter and that the defendant distributor had failed to appear based on his mistaken belief in that regard. The trial court refused to set aside the default judgment, and we reversed:

"We held in *Reitz* that the defendant's president and registered agent was excusably negligent when, after being personally served, he handed the papers to a subordinate without giving clear instructions about their nature or what to do with them and without taking any follow-up measures to assure that appropriate action had been taken. The facts here are different, but not really distinguishable. *In both cases, a high officer and registered agent of a corporation acted on a misapprehension that someone else would take care of matters; in both instances the responsible officer's belief was wrong and his failure to act was negligent, but no more inexcusably so in this case than in Reitz.*" 71 Or App at 32-33 (emphasis added).

Finally, two post-*Hackett/Reitz* cases, which plaintiff invokes, bear on our analysis: *Walker* and *Mount*. In *Walker*, the complaint was served on the defendant's registered agent, Koford. After waiting for a month, Koford forwarded the papers to Nokes, who was in charge of one of the defendant's local offices. However, Koford gave Nokes no instructions. Nokes, in turn, told a secretary in his office to send the papers to the defendant's insurance carrier. By mistake, she sent them to an insurance association, rather than to the carrier—and, by the time that mistake was discovered, the default had been entered. The trial court held that those circumstances did not establish excusable neglect, and we affirmed. In so holding, we distinguished *Reitz*:

"The only significant similarity between *Reitz* and this case is that in each a corporate officer failed to transmit the summons and complaint to the carrier. In *Reitz*, the president gave what he believed were adequate instructions to the controller, who took what he thought was the proper action. *The president knew what to do and thought that the controller would do it. He did not ignore the complaint.*

*There was a failure to communicate, but not a failure to act.* In this case, Koford did **nothing** for an undetermined period and then sent the papers to Nokes with *no suggestion that he expected Nokes to do anything.* * * * This case is not a story of a good faith attempt to appear that went awry but of *a disregard for the seriousness of the matter.*" *Walker*, 97 Or App at 572-73 (original emphasis in boldface; additional emphasis added; footnote omitted).[8]

In *Mount*, the complaint was personally served on the defendant's registered agent, Chamness, and, after the defendant failed to appear, the plaintiff obtained a default judgment. In moving to set aside the default, the defendant proffered the affidavit of the registered agent, in which he stated:

> " 'I do not deny being served with the Summons and Complaint * * * but my memory of it is not clear. As far as I can recall, I received the papers and followed my routine practice which was to give the Summons and Complaint to Susan Cusick, the office manager, or put it into her mail slot. She would then forward the papers to our home office in Springfield, Massachusetts. I believe I followed that procedure on this occasion.' " *Mount*, 103 Or App at 158.

Conversely, however, Cusick, although acknowledging that her ordinary practice would be to forward the papers to Massachusetts, stated that she did not recall receiving the summons and complaint from the registered agent. The trial court denied the motion to set aside, and we affirmed. In so holding, we distinguished *Hackett* and *Reitz*:

> "We agree with defendant that those cases establish a liberal standard for relieving corporate defendants from default when *process goes awry in the corporation's procedures.* We do not agree, however, that those cases support relief on a mere showing that the corporate officer or employee who is held out as the agent for service, and who is responsible for setting matters in motion when he receives service, cannot say to a probability what he did with the papers and whose speculation that he followed normal procedures is belied by the recollections of the other

_____

[8] Judge Edmonds dissented on the grounds that the circumstances in *Walker* were not meaningfully distinguishable from those in *Hackett* and *Reitz.* 97 Or App at 573-75.

employees that they did not receive the papers." *Mount*, 103 Or App at 159 (citations omitted).

From our review of the case law, we discern one dispositive and constant principle that transcends mere fact-matching: When a corporation's registered agent has been personally served and has, in fact, given the summons and complaint to an ostensibly responsible subordinate with instructions to take necessary steps to respond to the complaint, the defendant's failure to appear because of the subordinate's negligence is "excusable neglect." This case falls squarely within that principle. Here, as in *Reitz*, Fowler passed the summons and complaint on to a subordinate on the reasonable, but mistaken, belief that the subordinate "would take care of matters." *Hackett*, 71 Or App at 33. Indeed, this case is stronger than *Reitz* in that Fowler's instructions to Beals were unambiguous. Conversely, this is not a case like *Lowe* or *Mount*, where there is doubt or dispute about what the registered agent did after receiving the summons and complaint—here, both Fowler and Beals agree about what Fowler did. The only question is with respect to Beals's actions—and, under the entire line of cases we have canvassed from *Lowe* onward, the focus is on the registered agent's conduct—and not on the subordinate's. Finally, unlike the registered agent in *Walker*, Fowler neither ignored the complaint nor failed to give adequate direction to his subordinate. Rather, Fowler "knew what to do and thought that the controller would do it." *Walker*, 97 Or App at 572.

We thus conclude that the trial court erred in denying defendant's motion to set aside the default judgment. We note further, however, that, under ORCP 71 B(1), the court may grant relief "upon such terms as are just." Consequently, on remand, the trial court may exercise its discretion in that regard in the first instance.[9]

Reversed and remanded.

---

[9] We note that, in its letter opinion, the trial court indicated that, if it had decided to set aside the judgment, it would have conditioned that relief on defendant's payment of costs plaintiffs incurred "in his defense of a judgment lawfully obtained." At oral argument in our court, defendant's counsel acknowledged that defendant did not oppose conditioning Rule 71 B(1) relief on the imposition of an appropriate award of costs incurred by plaintiffs.