Argued and submitted January 12, affirmed October 3, 2007

Charita KNOX,
*Plaintiff-Respondent,*

*v.*

GenX CLOTHING, INC.,
*Defendant-Appellant,*

*and*

Timothy L. SAENZ
and Tabitha V. Saenz,
*Defendants.*

Multnomah County Circuit Court
040808651; A130874

168 P3d 1251

Paul R. J. Connolly argued the cause for appellant. With him on the briefs was Connolly & Goldian, LLP.

Curtis D. Kinsley argued the cause for respondent. With him on the brief was Kinsley & Chaudoin, P.C.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Brewer, C. J., *vice* Riggs, S. J.

**WOLLHEIM, J.**

Defendant GenX Clothing, Inc., appeals an order denying a motion to set aside a default judgment. Defendant argues that the trial court abused its discretion in failing to set aside the judgment on the ground of excusable neglect. We affirm.

██ We review a trial court's denial of a motion to set aside a default judgment for abuse of discretion. *Wood v. James W. Fowler Co.*, 168 Or App 308, 311, 7 P3d 577 (2000). If the facts are in dispute, we accept the trial court's findings if there is evidence in the record to support those findings. *Hiatt v. Congoleum Industries*, 279 Or 569, 575, 569 P2d 567 (1977); *see also Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

Defendant is an Oregon corporation with its head-quarters in Los Angeles, California. Defendant's two corporate officers—its president and its chief financial officer (CFO)—work at the Los Angeles corporate office. Defendant owns and operates several retail clothing stores in Oregon, including a store in Portland.

The underlying dispute arose out of an alleged shop-lifting incident that led to an altercation between plaintiff and security personnel at defendant's Portland store. Plaintiff initiated this action for assault and battery, intentional infliction of severe emotional distress, negligent hiring, and negligent training. At the time of the alleged shoplifting incident, West Coast Security Specialist provided security services to the Portland store. West Coast Security Specialist is an assumed business name of Timothy Saenz. Tabitha Saenz was an employee of West Coast Security Specialist.[1]

Initially, plaintiff sent two demand letters to defendant. Defendant did not respond; instead, it forwarded the letters to Timothy Saenz. After receiving no response from defendant, plaintiff filed a complaint. On August 24, 2004, plaintiff initiated office service by delivering a true copy of the summons and complaint to defendant's Portland store, to

---

[1] Although Timothy Saenz and Tabitha Saenz are defendants in plaintiff's original complaint, neither is a party to this appeal.

an individual identifying himself as "Shane Kim, the assistant manager" and the "person in charge." Plaintiff completed office service when she mailed, by first-class mail, a true copy of the summons and complaint to defendant's president and registered agent at the Portland store, where he maintains an office. ORCP 7 D(2)(c).

Employees at the Portland store subsequently forwarded the envelope containing the summons and complaint, unopened, to defendant's corporate office in Los Angeles, which was defendant's corporate practice at that time. Defendant's CFO testified that he received and opened the summons and complaint on or about September 13, 2004. The CFO testified that the president had designated him as the person responsible for overseeing lawsuits against the corporation. After reviewing the documents, the CFO faxed them to the corporation's outside counsel, a California attorney. On September 15, the California attorney advised the CFO to retain Oregon counsel, and the CFO subsequently telephoned the Oregon district manager to discuss retaining an Oregon attorney.

In support of its motion, the CFO and the district manager testified that each believed the other would hire an Oregon attorney. The CFO stated that he thought he had directed the district manager to hire an Oregon attorney, and the district manager testified that he thought that the CFO was merely informing him about the lawsuit and that the CFO would handle the lawsuit at the corporate level. Defendant acknowledges that that conversation between the CFO and the district manager was in Korean, their native language, in which both individuals are fluent. Defendant also acknowledges that the CFO did not forward a copy of the summons and complaint to the district manager, and that neither the CFO nor the district manager took any action on the lawsuit until April 2005. Additionally, the district manager averred that, in his native country, it was customary to have litigation extend for long periods without the parties having to formally respond, and both the CFO and the district manager testified that their experience with the American legal system was extremely limited.

Plaintiff moved for a default order after defendant failed to appear. On December 17, 2004, the trial court entered a default judgment in favor of plaintiff for $250,000 in noneconomic damages and $2,857.64 in economic damages. Plaintiff attempted to enforce the judgment by delivering a writ of garnishment. The district manager testified that since his September 15, 2004, conversation with the CFO, the district manager had not heard or done anything about the lawsuit until approximately April 20, 2005, when he received a writ of garnishment that plaintiff delivered to defendant's Hillsboro store a few weeks earlier. According to the district manager, he managed the Hillsboro store in addition to the Portland store. In this capacity, he would visit the Hillsboro store every two to three weeks and would collect and open the mail at that time. The employees of the Hillsboro store were not authorized to process the mail received at that store beyond collecting and holding it for the district manager.[2]

During the hearing on the motion to set aside the judgment, the district manager testified that, immediately upon seeing the writ of garnishment, he faxed it to the CFO in Los Angeles. The CFO then telephoned the district manager to again discuss hiring an Oregon attorney. Since the district manager did not know any Oregon attorneys, the CFO spoke with the president, who recommended an Oregon attorney who had represented defendant in another matter. The CFO then forwarded the Oregon attorney's contact information to the district manager on or about April 22, 2005, and by April 25, 2005, defendant retained that Oregon attorney.

Defendant advances two separate, yet related, explanations as to why its failure to appear was the result of excusable neglect. First, it explains that there was an unfortunate series of miscommunications within its corporate chain of command. Second, it argues that its corporate officers and employees were inexperienced with the American legal system and its strict time requirements.

---

[2] At the hearing on the motion to set aside the judgment, the district manager testified that defendant's corporate practice regarding the mail had changed. Instead of forwarding all correspondence to the corporate office once a week, he now opened the mail at the store for more immediate handling.

Defendant filed its first motion to set aside the judgment on the ground of improper service. After a hearing, the trial court denied defendant's motion on the ground of improper service, but allowed defendant to supplement its motion on the ground of excusable neglect. In addition to its renewed motion to set aside the default judgment, defendant filed an answer setting forth seven affirmative defenses to plaintiff's original complaint. The trial court denied defendant's renewed motion after a hearing in which the CFO, the district manager, and the process server testified, and after considering additional authorities submitted by both parties.

■ Defendant challenges that ruling, arguing that its failure to timely respond to plaintiff's complaint was excusable neglect as defined by ORCP 71 B(1), which provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]"

The parameters of excusable neglect, according to defendant, are identified in a trilogy of cases decided by this court. In each of those cases, we reversed the respective trial courts' denials of motions to set aside default judgments on the ground that the defendant had established excusable neglect as a matter of law. In *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978), the plaintiff served a product liability complaint on the defendant's president and registered agent. The president then handed the papers to the defendant's comptroller adding, "Here is another [product liability] case. Take care of it." *Id.* at 490. The president assumed that the comptroller would forward the papers to an industry association that had previously assumed responsibility for the defense of such matters or that the association had been separately informed of the lawsuit and would respond appropriately.[3] The comptroller, on the other hand, understood the

---

[3] The president had been served with legal process on two previous occasions. On each occasion, he gave the papers to another manager, not the comptroller, who then forwarded the papers to the appropriate person for handling. The president did not have any further involvement with either lawsuit beyond receiving and forwarding the documents. *Reitz*, 36 Or App at 490.

president's instructions to mean that he should place the complaint in "the products liability file," and nothing more. *Id*. Eventually, the plaintiff obtained a default judgment that the trial court refused to set aside. We reversed, holding that, while the president was negligent in failing to follow up with the association, his actions—or lack thereof—did not rise to the level of inexcusable neglect. *Id*. at 495.

Defendant next cites *Hackett v. Alco Standard Corp.*, 71 Or App 24, 691 P2d 142 (1984), *rev den*, 298 Or 822 (1985), in which the plaintiff brought a product liability action against the product's manufacturer, its parent corporations, and the distributor. The plaintiff served the complaint on the defendant distributor's president and registered agent. The president did not take timely action because he mistakenly believed that the defendant distributor's interests would be protected by the defendant manufacturer as well as one of the defendant parent companies. *Id*. at 32. The plaintiff obtained a default judgment against the distributor, and the trial court denied the distributor's motion to set aside the judgment. We reversed, concluding that those facts, though different from *Reitz*, were not significantly distinguishable, and that the distributor's president's failure to act, while negligent, was not inexcusably so. *Id*. at 33.

Finally, defendant relies on *Wood*, in which we concluded that the defendant corporation's failure to appear was the product of excusable neglect and that the trial court erred in refusing to set aside the default judgment. 168 Or App at 318. In *Wood*, the plaintiffs served a summons and complaint on a receptionist at the defendant corporation's office. The receptionist gave the complaint to the defendant's president and registered agent. After reviewing the documents, the president gave the papers to the defendant's comptroller and directed him to transmit the original summons and complaint to its insurance company through its insurance agent to prepare their defense.[4] Several weeks later, the comptroller contacted the insurance agent to check on the status of the

---

[4] According to the comptroller, it was his "ordinary and usual" practice to forward the summons and complaint to a member of the defendant's clerical staff with instructions to mail those documents to the defendant's insurance agent. For unknown reasons, that did not occur, the defendant did not file a timely responsive pleading, and the plaintiffs obtained an order of default against the defendant. *Wood*, 168 Or App at 311.

lawsuit and discovered that the agent had not received the documents. The comptroller then located the original summons and complaint and forwarded them to the insurance agent, who then forwarded them to the defendant's insurer. 168 Or App at 310-11. In concluding that the trial court erred in denying the defendant's motion to set aside a default judgment on the ground of excusable neglect, we observed:

> "When a corporation's registered agent has been personally served and *has, in fact, given the summons and complaint to an ostensibly responsible subordinate with instructions to take necessary steps to respond to the complaint*, the defendant's failure to appear because of the subordinate's negligence is 'excusable neglect.' This case falls squarely within that principle. Here, as in *Reitz*, *[the registered agent] passed the summons and complaint on to a subordinate on the reasonable, but mistaken, belief* that the subordinate 'would take care of matters.' "

*Id*. at 318 (citations omitted; emphasis added).

■      We understand the principle from the above-cited cases to be that, when a subordinate is directed by his superior—the person responsible for overseeing lawsuits—to take action, but does not, then the defendant's failure to make an appearance may constitute excusable neglect. Here, defendant acknowledges that the CFO was the corporate officer responsible for overseeing lawsuits. At the hearing on the renewed motion to set aside the default judgment, the CFO testified that he believed he had instructed the district manager—an ostensibly responsible subordinate—to hire an Oregon attorney to respond to plaintiff's complaint. Despite that expectation, the CFO did not provide the district manager with a copy of the summons and complaint.

Defendant argues that those facts are not materially distinguishable from *Reitz*, *Hackett*, and *Wood*. In those cases, according to defendant, this court concluded that a misunderstanding between a superior and a subordinate as to how to respond to a lawsuit may be excusable neglect, and as such, the trial court erred when it denied defendant's motion to set aside the default judgment on that ground. In support of its position, defendant argues that the courts have construed excusable neglect "liberally to the end that every

litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy." *King v. Mitchell*, 188 Or 434, 442, 214 P2d 993, 216 P2d 269 (1950) (construing a predecessor statute).

Defendant correctly states that the courts have favored a liberal construction of excusable neglect. However, a liberal construction still has limits, and the issue before us is whether the trial court abused its discretion in denying defendant's motion to set aside the default judgment. For the following reasons, we conclude that the trial court did not abuse its discretion.

According to defendant, one of the reasons it did not respond to the summons and complaint was because its CFO was under the mistaken belief that he had directed the district manager to retain Oregon counsel. The only evidence in the record to support that assertion is the CFO's testimony and affidavits. In considering that evidence, the trial court observed:

"THE COURT:    * * * The first layer of the inquiry, is it reasonable for a chief financial officer and a district manager for the State of Oregon to have a conversation—they said they had the conversation in Korean, they said they are both fluent in Korean, and as a result of that conversation for each of them to have thought that the other one was going to hire an Oregon lawyer to handle the situation, okay, that may well be excusable, may not, but it may be."

Based on that statement, it is apparent that the trial court considered defendant's argument that it was excusably negligent because its CFO and district manager misunderstood each other. From the record, we also discern that defendant did not substantiate the testimony of either its CFO or its district manager regarding the contents of their telephone conversation. Because each person had a conflicting understanding about who would do what, neither could corroborate the other as to what was actually said.

Our decision in *Mount v. Massachusetts Mutual Life Ins. Co.*, 103 Or App 156, 796 P2d 388 (1990), *rev dismissed*, 311 Or 151 (1991), informs our analysis in the present case. In *Mount*, the defendant insurance company appealed the

trial court's denial of its motion to set aside a default judgment on the ground of mistake, inadvertence, surprise, or excusable neglect. *Id.* at 158. In support of its motion, the defendant submitted an affidavit by its registered agent in which he averred that he recalled receiving the summons and complaint but that he could not remember with any specificity or certainty what he did with the documents. In lieu of a specific recollection, he stated that he believed he followed his usual practice on that occasion, which involved forwarding the documents to the defendant's home office, either personally or through the office manager. The defendant also introduced affidavits of individuals from the home office and the defendant's attorney's office, in which the affiants averred, among other things, that they did not receive the summons and complaint. *Id.* at 158. In affirming the trial court's denial of the defendant's motion to set aside the judgment, we wrote:

> "We agree with defendant that those cases[5] establish a liberal standard for relieving corporate defendants from default when process goes awry in the corporation's procedures. We do not agree, however, that those cases support relief on a mere showing that the corporate officer or employee who is held out as the agent for service, and who is responsible for setting matters in motion when he receives service, cannot say to a probability what he did with the papers and whose speculation that he followed normal procedures is belied by the recollections of the other employees that they did not receive the papers."

*Id.* at 159 (citations omitted).

In this case, the trial court had only the CFO's unsubstantiated submission that he directed defendant's district manager to handle the lawsuit and retain an Oregon attorney. That submission is belied first, by the district manager's testimony that he understood that the CFO would retain an Oregon attorney and that their conversation was merely for informational purposes, and second, by the fact

---

[5] *Hiatt v. Congoleum Industries*, 279 Or 569, 569 P2d 567 (1977); *Wager v. Prudential Ins. Co.*, 276 Or 827, 556 P2d 658 (1976); *Hackett v. Alco Standard Corp.*, 71 Or App 24, 691 P2d 142 (1984), *rev den*, 298 Or 822 (1985); *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978).

that the CFO did not provide the district manager with a copy of the summons and complaint.

Defendant also argued that another reason it failed to timely respond to the lawsuit was that neither the CFO nor the district manager had much experience with the American legal system. At the hearing on the motion to set aside the judgment, the following colloquy took place between the trial court and defendant:

"THE COURT: Okay. And my other question to you [defendant] would be I want to make sure that I understand because it sounds to me like this is a strong or a large part of your argument is that there was confusion on the part of the corporate defendant as a result of cultural issues, that's what you said several times.

"And I want to make sure that what you mean by that [is] not that there was a language [barrier] between anybody because it sounded to me like the people who had the conversation that resulted in the confusion both were fluent in Korean and the conversation took place in Korean—took place in Korean—it was spoken in Korean.

"So it wasn't like there was a language [barrier], but what you're saying is that both of the people involved in the conversation are used to a legal system where it's not unusual for there to be a long delay before anything happens in a lawsuit. That's what you mean by the cultural issue, right?

"[Defense Counsel]: There's that issue. And, secondly, I believe [the CFO] testified when he examined, first examined the summons and complaint, he didn't understand what it was about."

Here, defendant's explanation is similar to the defendant's explanation in *Walker v. Allied Fidelity Ins. Co.*, 97 Or App 568, 777 P2d 990, *rev den*, 308 Or 466 (1989). In *Walker*, the defendant insurance company appealed from the trial court's denial of its motion to set aside a default judgment. The defendant explained that its failure to properly respond to the complaint arose out of its registered agent's inexperience in dealing with lawsuits. Although the registered agent had been with the insurance company for 25 years, he had received only one other complaint during that time. We were

not persuaded and observed that "a person with 25 years in the insurance business should know the perils of ignoring a lawsuit." *Id.* at 572. On appeal, we affirmed the trial court's refusal to set aside a judgment and concluded that "[i]nexperience is not an excuse for failing to seek the help of someone who is experienced." *Id.*

In this case, in considering defendant's explanation for its failure to respond to plaintiff's complaint, the trial court observed:

"THE COURT: But then if that is excusable at that stage [when the CFO and district manager are alleged to have miscommunicated] is it still excusable neglect for seven months to pass and neither of them to have asked each other what's happening or asked anybody what's happening, or for the chief financial officer to have said, 'Wait a minute. I've seen no expenses come through here related to this lawsuit. I've seen nothing to indicate that we have a lawyer.'

"\* \* \* \* \*

"You have the corporate counsel in Los Angeles who knows about [the lawsuit]. You have the district manager for Oregon who knows about it. You have the chief financial officer who knows about it. You have the president of the corporation who has been told about it but not shown the complaint, and apparently none of these four people, within the seven-month period, ever asked anybody, 'What's happening with this lawsuit?'

"So how does that continue, if it was excusable neglect to begin with for people to conclude that somebody else within the corporation was hiring a lawyer, how does it continue to be excusable neglect for seven-month period? That—that's where I'm having trouble."

In considering all of the evidence before it, the trial court concluded:

"THE COURT: \* \* \* [I] am still denying defendants' motion to set aside on default judgment.

"\* \* \* \* \*

"I listened very closely to all the testimony of the witnesses and found that this was not a simple case like you

see sometimes where the corporation may have set up a procedure and there was some excusable negligen[ce] in carrying out that procedure.

"That in this case we do not have that type of case and that what happened here went way past the line of excusable negligen[ce] to essentially ignoring the litigation and the subsequent judgment got entered as a result of the actions of the people affiliated with GenX Clothing, Inc."

The trial court made implicit credibility and factual findings about defendant's witnesses. Those findings formed the bases of its refusal to set aside the default judgment. First, the trial court found that the CFO and district manager conversed in a language in which both were fluent. Second, even if a miscommunication actually occurred between them, and assuming that the trial court found that the CFO believed that the district manager would, and could, respond to the lawsuit, the record supports the finding by the trial court that the CFO's belief was unreasonable, given that the CFO did not provide a copy of the summons and complaint to the district manager. Third, the trial court found that, unlike the defendants in *Reitz*, *Hackett*, and *Wood*, defendant here did not have a corporate procedure that broke down because of a subordinate's failure to execute that procedure; rather, defendant did not have *any* procedures to respond to lawsuits. Finally, according to the trial court, even if defendant may have been excusably negligent initially, in September 2004, when defendant argues that its CFO and district manager miscommunicated, defendant could not continue to claim excusable neglect for an additional seven months during which no one within the corporation followed up on the lawsuit, until April 20, 2005, when the district manager saw the writ of garnishment.

On those facts, the trial court did not abuse its discretion in denying defendant's motion to set aside a default judgment on the ground of excusable neglect.

Affirmed.