Argued August 24, reversed and remanded October 2, 1978

REITZ, *Respondent,*
*v.*
COCA-COLA BOTTLING COMPANY OF EUGENE,
*Appellant.*
(No. 22077, CA 10012)
584 P2d 791

Neil R. Bryant, Bend, argued the cause for appellant. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Gale K. Powell, Bend, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant appeals an order denying a motion to set aside a default judgment under ORS 18.160.[1]

Plaintiff's amended complaint may be summarized: On October 28, 1976, he purchased from a vending machine controlled by defendant a bottle of pop manufactured by defendant which contained pieces of broken glass. He drank directly from the bottle and as a result of swallowing the glass suffered physical injuries accompanied by pain and mental anguish. He asked for judgment for $7,500 general damages and $71.40 medical and hospital expenses.

Shortly after the incident plaintiff's attorney wrote to the Coca-Cola bottler located in Bend, which had bottled the soda and which was a subsidiary of defendant. He explained what had happened to plaintiff and requested that "your authorized representative contact this office that we may discuss settlement of the claim." The letter was referred to the Coca-Cola Bottling Association of America (the association), an organization in Atlanta, Georgia, which handles insurance for Coca-Cola bottlers throughout the country, including defendant. Plaintiff submitted a claim form to the association, and on request also later sent medical records. After failing to reach a settlement with the association, plaintiff filed his original complaint, naming as defendant the Pacific Coca-Cola Bottling Company. After learning that Pacific Coca-Cola had no relationship to the Bend bottler, but that defendant did, plaintiff filed his amended complaint on August 1, 1977. Prior to filing the amended complaint, plaintiff's attorney called Stanley McNutt, the president and registered agent of defendant. He informed McNutt that he had been in contact with the

---

[1] ORS 18.160:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

association and that he would soon be filing a lawsuit. McNutt explained that all products liability claims were handled by the association.

On August 3, 1977, a summons (which contained the notice required by ORS 15.040) and complaint were personally served upon McNutt as he was leaving defendant's offices. He was with one or two other persons, and they were late for a meeting. When McNutt saw the papers, he correctly assumed that they were related to the matter about which he had spoken with plaintiff's attorney. He handed the papers to Ralph Bohn, the corporate comptroller, who was standing nearby. Not wishing to discuss the claim in front of the others, McNutt said to Bohn: "Here is another Tinker case. Take care of it." The case to which McNutt referred was another products liability case then pending against defendant.

Bohn was familiar with that case, because it was his responsibility to maintain files on important corporate matters. He referred to the file on that case as "the products liability file." Bohn's understanding of McNutt's direction was that the papers were to be placed in that file. He did so. It is not clear, however, what McNutt actually expected Bohn to do with the papers. Apparently he assumed either that Bohn would forward them to the association or that the association had been independently informed of the suit and would make any necessary response. In his four-and-one-half years as president of the company, McNutt had been served with legal process two other times. On both of those occasions he had given the papers to the office or provisions manager,[2] who forwarded them to the association, and McNutt had had no further involvement with process in the cases. In his two years with defendant Bohn had not previously been asked to forward legal papers to the

---

[2]The person who had previously forwarded the papers to the association was no longer employed by defendant when the papers involved here were served.

[ 490 ]

association. McNutt did not ever inquire what Bohn had done with the summons and complaint.

On September 6, 1977, defendant having made no appearance, an order of default was entered. On September 20, judgment was entered on the default in the amount prayed for. A few days later, McNutt learned of the default and had the summons and complaint forwarded to the association. On September 26, defendant's attorney called plaintiff's attorney and requested that plaintiff not execute on the judgment until he obtained the file on the matter from the association and reviewed it to determine if there were gounds for setting aside the default. Two days later, defendant's attorney wrote plaintiff's attorney to confirm that he would probably move to set aside the judgment, depending on the contents of the association's file. On October 28, 1977, defendant's motion to set aside the judgment was filed, with supporting affidavits from McNutt and Bohn and an answer denying all material allegations except defendant's status as an Oregon corporation and its business.

The trial court heard testimony and denied the motion, stating:

> "This court finds that under the definition set forth in Hiatt versus Congoleum Industries that the defendant did not exercise due care through its agent, that further, this negligence was inexcusable negligence that [sic] the reason that personal service was made upon one who had the duty of a registered agent, and that duty is something that the law requires a person to assume and take care of as far as any further responsibility."

The sole issue presented is whether the trial court abused its discretion in denying the motion. The discretion under ORS 18.160 is not unfettered, but is "an impartial discretion, guided and controlled in its exercise by fixed legal principles." *Wagar v. Prudential Ins. Co.,* 276 Or 827, 833, 556 P2d 658 (1976), quoting *Thompson v. Connell,* 31 Or 231, 48 P 467, 65 Am St Rep 818 (1897). That principle was reaffirmed in *Hiatt v. Congoleum Industries,* 279 Or 569, 569 P2d

567 (1977), where the court, in reversing a denial of a motion to set aside a default judgment, quoted with approval the following passage from *Coleman v. Meyer,* 261 Or 129, 134, 493 P2d 48 (1972):

"* * * [T]he court's discretion is controlled by fixed legal principles and must not be exercised arbitrarily, but, rather, it should be exercised to conform with the spirit of the statute and not to defeat the ends of substantial justice."

*See also Washington County v. Clark,* 276 Or 33, 38, 554 P2d 163 (1976). Where the facts are in dispute, we accept the trial court's view of what occurred, even though the evidence is customarily presented by affidavit. *Hiatt v. Congoleum Industries, supra.* Given the facts, the question in each case is whether in light of the applicable legal principles the decision of the trial court was reasonable. *Hiatt v. Congoleum Industries, supra.*

The party seeking relief must establish that the default order was entered against him through mistake, inadvertence, surprise or excusable neglect. ORS 18.160; *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977).[3] He must also tender a defense raising substantial issues. *Bella v. Aurora Air, Inc., supra.* In addition, the court should consider whether the party seeking relief acted with reasonable diligence after learning of the default and whether the other party was prejudiced by the delay resulting from the default. *Wagar v. Prudential Ins. Co., supra.*

In support of his argument that there was no mistake, inadvertence, surprise or excusable neglect,

---

[3]In *Hiatt v. Congoleum Industries,* 279 Or 569, 577 n 1, 569 P2d 567 (1977), the court summarized its holding in *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977):

"[W]e stated that unavoidable delay and due diligence were not made out merely because the complaint and summons were given to defendant's insurance broker and channeled through several offices to the insurer's claims office, since it was the defendants that were summoned, not their insurance carrier. Nevertheless we held it within the trial court's discretion to set aside a default judgment against defendants when the motion to set aside was made as quickly as possible and no prejudice to plaintiffs had occurred."

plaintiff relies primarily upon *Lowe v. Institutional Investors Trust,* 270 Or 814, 529 P2d 920 (1974). In that case an employee authorized to accept service of legal process was personally served but could not explain why no appearance was made. He had no recollection of the service and could find no record of the matter in company records. The court affirmed the denial of a motion to set aside the default judgment, concluding that

> "[t]he affidavit thus establishes only that [the agent] has no recollection of having been served and that he has been unable to find the summons and complaint in his files or in the files of [defendant.] It is obvious that the affidavit does not establish any mistake, inadvertence or surprise and we conclude it is insufficient to establish excusable neglect." 270 Or at 818.

Defendant relies upon *Wagar* and *Hiatt.* In *Wagar* defendant's registered Oregon agent was served and promptly mailed the summons and complaint to defendant's law department in Los Angeles, as was the usual practice. The summons and complaint were never received and neither defendant's Los Angeles attorneys nor its retained Oregon counsel actually knew of the action. The agent did not check to see if the papers had reached Los Angeles. The Supreme Court reversed the trial court, which had ruled that it was inexcusable neglect to rely upon ordinary first class mail.

In *Hiatt* an experienced part-time mailroom employee whose practice it was to forward all legal documents to the law department was on duty when the papers were served, but he had no recollection of receiving them, and they never reached the law department. The Supreme Court reversed the denial of a motion to set aside the default, holding that the evidence established excusable neglect as a matter of law. The court reiterated the policy to be followed by trial and appellate courts in considering motions to set aside default judgments:

" ' "Ordinarily, if he presents reasonable grounds excusing his default, the courts are liberal in granting relief, for the policy of the law is to afford a trial upon the merits when it can be done without doing violence to the statute or established rules of practice that have grown up promotive of the regular disposition of litigation." ' " 279 Or at 579.

■ In *Hiatt* the Supreme Court distinguished the situation from that involved in *Lowe*.[4] The circumstances in this case are distinguishable from those in *Hiatt, Lowe* and *Wagar* in at least one significant respect: In those cases the fate of the summons and complaint after their initial receipt by defendants' agents was unclear. Here there is no mystery. McNutt gave the papers to Bohn, an otherwise reliable employee who was responsible for the file on another pending products liability case and who was aware that the association handled such matters. Bohn, however, had never before been asked to forward papers to the association or to do anything other than clerical filing in connection with products liability matters. It is not clear, therefore, that he would have forwarded the papers to the association in this instance even if he had clearly understood that they concerned a matter unrelated to the "Tinker" case.

---

[4] 279 Or at 578-79:

"*Lowe* involved personal service, an event of greater impact than the receipt of a letter containing a summons and complaint in a mail room. The personal service was made upon an officer of the corporation who was assigned the duty of acting as the corporate agent to receive service.

"We concluded in *Lowe* that a trial court could reasonably find that it was inexcusable negligence for a corporate agent for service to have lost and have no memory or record of a summons and complaint personally served upon him. We conclude that is not comparable to having the contents of a letter lost between the mail room and the corporate legal room and the employee of the mail room having no memory of receiving or transmitting the letter or its contents. *Wagar v. Prudential Ins. Co., supra* (276 Or 827), supports this conclusion. In *Wagar*, as in the present case, the letter containing the summons and complaint never reached the defendant's law department. Why this occurred is unknown in both cases. In *Wagar* we reversed a holding by the trial court that the default taken as a result of the disappearance of the letter was the result of inexcusable neglect."

However, Bohn might at least have inquired what to do with the papers had McNutt not chosen to characterize the case as "another Tinker case."

Plaintiff was not of course, required to serve the association. We agree that despite his inexperience, McNutt was negligent in failing to insure that the association was notified and a timely appearance entered. We do not agree, however, that his negligence was inexcusable.

■ Defendant tendered a defense raising substantial issues, including among other things the amount of liability. Defendant acted with reasonable diligence after learning of the default, and plaintiff failed to show that he was prejudiced by the lapse of time resulting from defendant's failure to file a timely appearance. Considering all those factors and the strong policy of the law to afford a defendant a trial on the merits, we believe the trial court abused its discretion in denying the motion. *See Morrell v. Lane County,* 35 Or App 793, 582 P2d 847 (1978).

Reversed and remanded.