Argued and submitted June 26, affirmed September 12, 2012

Judy JOHNSON,
an individual,
*Plaintiff-Appellant,*

*v.*

SUNRIVER RESORT LIMITED PARTNERSHIP,
a foreign limited partnership,
dba Sunriver Lodge & Resort,
*Defendant-Respondent.*

Deschutes County Circuit Court
10CV0455MA; A147729

287 P3d 1153

Brian J. MacRitchie argued the cause for appellant. With him on the brief was Hurley Re, P.C.

Ryan J. McLellan argued the cause for respondent. With him on the brief were W. Michael Quillen, and Smith, Freed & Eberhard, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Plaintiff appeals the trial court's order setting aside a default judgment in plaintiff's favor. The trial court relieved defendant from default under ORCP 71 on the ground that the default had resulted from defendant's excusable neglect. For the reasons set forth below, we affirm.

In reviewing a trial court's decision to grant relief from default, we are bound by the court's factual findings if they are supported by any evidence in the record. *Terlyuk v. Krasnogorov*, 237 Or App 546, 553, 240 P3d 740 (2010), *rev den*, 349 Or 603 (2011). For purposes of this appeal, the historical facts largely are undisputed. Plaintiff alleges that she fell in defendant's store and suffered injuries as a result of defendant's negligence. In July 2008, defendant's insurer, Zurich North America (Zurich NA), received notice of plaintiff's claim against defendant. That claim was assigned to claims adjuster Lorene Smith. In early 2009, Smith sent a letter to plaintiff's attorney denying liability for the claim. In February 2010, a different attorney notified Zurich NA, by letter directed to Smith, that he would be representing plaintiff in connection with the accident. Smith acknowledged that representation letter in March. In May, plaintiff's attorney sent another letter to Smith, asserting that he would be filing a complaint on plaintiff's behalf. Smith informed one of defendant's employees, Sally Heise, that she should watch for a complaint that might be served on defendant.

Plaintiff filed her complaint in late May 2010. On June 11, plaintiff's summons and complaint was served on defendant's registered agent, CT Corporation Systems. The summons notified defendant that it was required to appear in the case within 30 days. A few days later, Smith received courtesy copies of the summons and complaint from plaintiff's lawyer. At around the same time, CT Corporation sent defendant copies of the summons and complaint with which it had been served.

On June 16, 2010, another of defendant's employees, Rachel Pederson, e-mailed Smith copies of the documents that defendant had received from CT Corporation, stating that she thought Smith might already have heard from Heise, but explaining that she wanted to make sure that

"we get counsel assigned and an answer filed." Smith responded, indicating that Zurich NA would "get this assigned to counsel & file the answer."

At that point, Smith understood that defendant had been served with a complaint and that the claim needed to be assigned to an attorney because defendant had "a limited amount of time to file an answer." Accordingly, Smith notified her supervisor, Todd Spivey—still on June 16—that she had received the summons and complaint. Spivey is a team manager for Zurich NA whose responsibilities include overseeing claims and supervising claims adjusters. That same day, Spivey sent an e-mail to Zurich NA administrative employee June Sheppard directing her to transfer the case from Smith, who did not handle litigated claims, to Dean Ohara, who did. Spivey's e-mail "was also sent to Dean Ohara and included as an attachment a copy of the lawsuit that had been served." In the e-mail, Spivey directed Ohara to "see Znotes" (apparently a kind of internal notation system). There, Spivey directed Ohara to handle the case and reminded him "to call the plaintiff's counsel to discuss [the] case" and learn his theory of liability. Sheppard also entered a Znote; hers indicated that the case had been reassigned to Ohara because of a "change in complexity," meaning it had shifted from nonlitigated to litigated status.

Spivey explained at his deposition that he supervised eight claims representatives, about five of whom handled litigated claims. Spivey assigned claims to those representatives depending on their experience and aptitude, generally assigning litigated claims to the more experienced representatives. Ohara was one of those experienced claims representatives; he testified at his own deposition that he has handled litigated claims for over 20 years and first handled a litigated claim in Oregon 15 or 20 years ago. Ohara often has referred litigated claims to attorneys so they can represent Zurich NA's insureds. His normal practice, after having a litigated claim assigned to him, is to review the file and the summons and complaint to determine whether to refer it out to defense counsel.

Spivey expects the claims representatives who handle litigated claims to be aware of the amount of time

they have "to get an attorney on a case" so the defendant can make a timely appearance. He explained that, once he had assigned the claim to Ohara, Ohara would have known that he was the only claims representative responsible for handling that claim. It then was Ohara's responsibility to find out when a responsive pleading was due, to re-analyze potential coverage, and to refer the case to defense counsel for a responsive pleading to be filed. In a declaration, Spivey asserted that Ohara was familiar with the procedures that Zurich NA has in place "to prevent and avoid occurrences of default judgments being entered against Zurich NA's insureds":

> "Specifically, when Zurich NA is notified that a lawsuit has been served on an insured, the Zurich NA claims adjuster assigned to the claim is to refer the lawsuit to qualified defense counsel within five (5) business days of receipt of the suit so that defense counsel may enter an appearance or otherwise protect against a default judgment being entered against the insured. All Zurich NA claims adjusters, including Dean Ohara, are instructed on this procedure."

Despite his experience and despite the case having been transferred to him, Ohara did not refer the case to defense counsel. On July 13, 2010, plaintiff moved for an order of default, as defendant had not yet filed an answer, made any other appearance in the case, or informed plaintiff that it intended to do so. The trial court judge signed an order of default on July 20 and the court entered a default judgment against defendant on July 22. On September 22, 2010, plaintiff's attorney informed Zurich NA that he had filed and taken a default judgment. That day, Zurich NA retained counsel to represent defendant in the litigation. On September 30, defendant filed its motion for relief from default under ORCP 71 B, arguing that the default was a result of excusable neglect.

In a declaration supporting defendant's motion for relief from default, Ohara stated that he had received the June 16 e-mail from Spivey notifying him that he had been assigned plaintiff's lawsuit and attaching a copy of it. He also stated that, "[f]or some unknown reason that [he could not] explain, [he] failed to refer the lawsuit to qualified defense counsel within five (5) days of receipt, as set forth

in Zurich NA's procedures." At his later deposition, Ohara said that he could not recall having seen the e-mail from Spivey and had no recollection of having been assigned plaintiff's claim. Ohara explained that he had reviewed some of the related documents after the default judgment was taken and had found that he had not made any entries in plaintiff's claim file. "Based upon [his] review and recollection," Ohara testified at deposition that he had not reviewed the Znotes on plaintiff's claim as Spivey had instructed him to. He acknowledged that, if he in fact received the e-mail from Spivey, he would have known that the file was his responsibility and that it was up to him to refer the matter to qualified defense counsel to enter an appearance or "otherwise protect the lawsuit from default."

As noted, the trial court granted defendant's motion for relief from default. The court set forth its reasoning in a letter opinion, explaining why it determined that the default was a result of excusable neglect:

> "Zurich NA had policies and procedures established to avoid default judgments and to protect its insured's interest. These policies and procedures were followed by Zurich until the complaint was given to Mr. Ohara to handle Plaintiff's complaint. Clearly Mr. Ohara failed to take proper action, which resulted in the default judgment being entered against the Defendant. Although Mr. Ohara apparently has not offered any excuse for his failure to handle the complaint properly, this does not mean that the Court must find that Zurich NA handled this matter with 'inexcusable neglect' as argued by Plaintiff. In every case in which an insurance company fails to handle a complaint properly, resulting in a default judgment, there has been some mistake or neglect on the part of the insurance company.

> "* * * * *

> "To summarize this matter very simply, the Plaintiff obtained a default judgment because a subordinate employee of Zurich NA failed to act properly when given the Plaintiff's complaint. This was a mistake by the employee and with regard to Zurich NA was excusable neglect under the circumstances."

On appeal, plaintiff challenges the order granting defendant's motion to set aside the default judgment. Plaintiff's primary argument is that the trial court erred by concluding that the default was the result of excusable neglect. She contends that Ohara "failed to act" in a way that cannot constitute excusable neglect because he was an experienced claims representative who bore responsibility for ensuring that plaintiff's complaint was referred to an attorney to defend. Plaintiff points out that Ohara "was not laboring under a misapprehension of fact," but "knew exactly what he had to do to protect his insured from a default," simply did not do it, and could offer no explanation for his failure. Plaintiff contends that, given those circumstances, this case is governed by *Burke v. Rachau*, 262 Or 323, 497 P2d 1154 (1972), in which the Supreme Court upheld a trial court's refusal to set aside a default judgment. Secondarily, plaintiff argues, again relying on *Burke*, that "insurance claims representatives [are] subject to higher standards than 'inexperienced' or 'unrepresented laymen.'" She contends that the trial court should have held Ohara to that higher standard.

In response, defendant largely defends the trial court's analysis, asserting "that motions to set aside default judgments should be granted liberally." Defendant also argues that "*Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978), and its progeny establish that an ostensibly responsible subordinate employee's failure to follow procedures, [policies], and direction from a supervisor that leads to a Default Judgment constitutes excusable neglect." Finally, defendant rejects any suggestion that a "higher standard of care" applies to neglect attributable to insurance claims representatives.

Our analysis begins with ORCP 71, which describes circumstances in which trial courts may grant relief from judgments and orders. The pertinent part of that rule provides:

> "On motion and upon such terms as are just, the court may relieve a party * * * from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or *excusable neglect*[.] * * * The motion shall be made within a reasonable

> time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment."

ORCP 71 B(1) (emphasis added). We review the trial court's ultimate decision—whether to grant relief under ORCP 71 B(1)—for abuse of discretion. *Saldivar v. Roberts*, 240 Or App 371, 376, 246 P3d 91 (2011). However, whether certain conduct or inaction constitutes "excusable neglect" is a question of law, and we review the trial court's answer to that question for legal error. *Id.*

Several important principles may be derived from our "excusable neglect" decisions, three of which are particularly relevant to this case. The first reflects the policy underlying ORCP 71 B, which is "to allow defaulted parties to have their day in court, when it can be done 'without doing violence to the regular disposition of litigation.'" *Mary Ebel Johnson, P.C. v. Elmore*, 221 Or App 166, 171, 189 P3d 35, *rev den*, 345 Or 301 (2008) (quoting *National Mortgage Co. v. Robert C. Wyatt, Inc.*, 173 Or App 16, 23-24, 20 P3d 216, *rev den*, 332 Or 430 (2001)); *see also Terlyuk*, 237 Or App at 553 (similar). To that end, courts "liberally construe ORCP 71 B(1)(a) so as to avoid the harsh result of depriving a party of its day in court." *Saldivar*, 240 Or App at 375.

The second pertinent principle builds on the first. Generally speaking, neglect that leads to a default will be deemed "excusable" when a defendant, or a person acting on the defendant's behalf, took reasonable initial steps to ensure that an appropriate response would be filed to a complaint, even though the process later broke down. For example, in *Terlyuk*, the defendant's insurance adjuster mistakenly believed that the copy of the summons and complaint it had received from the plaintiffs were only courtesy copies of documents that had been filed but not yet served (in reality, the defendant had been served). 237 Or App at 549. Accordingly, the insurance adjuster gave the insured party instructions on what to do if a complaint was served. Because the adjuster "did not ignore the letter," but "took steps to respond to plaintiffs' demand, consistently with her [mistaken] understanding," we held that her actions constituted excusable neglect. *Id.* at 555.

That principle applies even when one person acting for the defendant takes reasonable steps to get the response process underway, but another person later fails to perform his or her associated duties, as we explained in *Wood v. James W. Fowler Co.*, 168 Or App 308, 7 P3d 577 (2000). In that case, the defendant's president and registered agent was served with a summons and complaint. He gave the complaint to the defendant's comptroller and told him to transmit it to the defendant's insurance agent. *Id.* at 310. Although the comptroller's usual practice was to give the original summons and complaint to a member of the defendant's clerical staff with instructions to mail the documents to the insurer, "[f]or unknown reasons, that did not occur in this case," and the defendant took a default judgment. *Id.* at 311. We reversed the trial court's denial of the defendant's motion to set aside that judgment, holding that a "dispositive and constant principle" could be drawn from earlier cases, including *Reitz*: "When a corporation's registered agent has been personally served and has, in fact, given the summons and complaint to an ostensibly responsible subordinate with instructions to take necessary steps to respond to the complaint, the defendant's failure to appear because of the subordinate's negligence is 'excusable neglect.'" *Id.* at 318.

A third principle may be thought of as the converse of the second: when a defendant did *not* take any reasonable steps to respond to a complaint, we have held, the defendant's neglect was *in*excusable. That principle guided our decision in *Saldivar*, in which the defendants were personally served with the summons and complaint but did not timely file a response. 240 Or App at 373. The plaintiff obtained a default judgment, which the defendants moved to set aside on the ground of excusable neglect based on the personal difficulties (including a divorce proceeding) that one of the individual defendants was having at the time he was served. *Id.* at 373-74. As we put it, the defendant "disregarded plaintiff's action," including the summons and complaint that he acknowledged having received, "because he was overwhelmed with the other issues in his life." *Id.* at 374. As a matter of law, we held, that "failure to take any action without reasonable explanation [was] inexcusable neglect." *Id.* at 376. Because nothing in the

record would support a finding that the defendant's personal circumstances "made him unable to respond," we concluded "that simply choosing to ignore a matter—even in the face of difficult circumstances—does not qualify as a reasonable explanation so as to give rise to excusable neglect." *Id.* at 377; *see also Walker v. Allied Fidelity Ins. Co.*, 97 Or App 568, 573, 777 P2d 990, *rev den*, 308 Or 466 (1989) (affirming trial court's determination of "no excusable neglect" where the case did not present "a story of a good faith attempt to appear that went awry but of a disregard for the seriousness of the matter").

Moreover, because a party seeking relief from default under ORCP 71 B(1)(a) must show that its default was the result of mistake, inadvertence, surprise, or excusable neglect, the party's inability to establish that the person initially responsible for responding to a complaint or other filing took *any* reasonable steps to respond normally will defeat its motion for relief. *See Stull v. Ash Creek Estates, LLC*, 187 Or App 63, 69, 66 P3d 515 (2003) (failure of the plaintiff's attorney to respond to the defendant's summary judgment motion did not establish excusable neglect where the attorney could offer no explanation other than his unsupported assumption that his response to the motion had been lost in the office or mailed to the wrong location); *Mount v. Massachusetts Mutual Life Ins. Co.*, 103 Or App 156, 159, 796 P2d 388 (1990), *rev dismissed*, 311 Or 151 (1991) (the defendant's default was not the result of excusable neglect where its registered agent was served, but the agent could not "say to a probability what he did with the papers" and could only speculate that he followed normal procedures). A defendant's failure to adopt policies or procedures for responding to litigation also may undermine a claim that its lack of response to a complaint was the result of excusable neglect. *See Knox v. GenX Clothing, Inc.*, 215 Or App 317, 320, 329, 168 P3d 1251 (2007) (where the defendant's CFO and its Oregon district manager discussed a lawsuit and each thought the other would hire an Oregon attorney, the defendant's default was not the result of excusable neglect, partly because any belief the CFO had that the district manager would respond to the lawsuit was unreasonable, given that the CFO did not provide the manager with a copy of the summons and complaint, and partly because, "unlike

the defendants in *Reitz*, [another case,] and *Wood*, defendant here did not have a corporate procedure that broke down because of a subordinate's failure to execute that procedure; rather, defendant did not have *any* procedures to respond to lawsuits" (emphasis in original)).

Considered together, those principles dictate the outcome of this case. Here, defendant's registered agent did not simply ignore the summons and complaint; rather, it forwarded copies of those documents to defendant. Nor did defendant overlook the fact that litigation had ensued; it, in turn, forwarded copies of the summons and complaint to Zurich NA adjuster Smith, noting the importance of getting the case assigned to counsel. And Zurich NA did not entirely drop the ball. To the contrary, claims supervisor Spivey, as well as subordinate employees Smith and Sheppard, each took steps reasonably calculated to ensure that an appropriate response to the complaint would be filed on defendant's behalf. Only after those reasonable steps had been taken to prevent a default did Ohara apparently neglect his responsibilities to review the complaint and, if appropriate, refer it to defense counsel. Under *Wood*, that neglect by a downstream subordinate employee is "excusable" and justified the trial court's decision to set aside the default judgment under ORCP 71 B(1)(a). *See Wood*, 168 Or App at 318 (when a "registered agent has been personally served and has, in fact, given the summons and complaint to an ostensibly responsible subordinate with instructions to take necessary steps to respond to the complaint, the defendant's failure to appear because of the subordinate's negligence is 'excusable neglect'").

In arguing to the contrary, plaintiff relies heavily on *Burke*, in which the Supreme Court affirmed the trial court's denial of the defendant's motion to set aside a default judgment. In that case, the defendant's insurance adjuster had negotiated with the plaintiff's lawyer to obtain an extension of time in which to respond to the plaintiff's complaint. 262 Or at 326, 330. The defendant failed to file an appearance by that extended deadline. *Id.* at 327. The Supreme Court held that the trial court did not abuse its discretion in determining that the defendant's default had not resulted from mistake, inadvertence, surprise, or excusable neglect, given that the insurance adjuster had

"venture[d] into the legal arena by undertaking to arrange for an extension of time to file an appearance." *Id.* at 337. That assumption of a role usually performed by lawyers, the court held, made the case unlike those in which the defendant's "'sole representation' *** 'was by an insurance adjuster.'" *Id.* at 337-38.

Plaintiff argues that *Burke* controls here because, like the insurance adjuster in *Burke*, Ohara failed to refer the complaint to a lawyer to defend. Defendant counters that, in this case, "there is no evidence that any of Zurich NA's insurance claims representatives *** 'venture[d] into the legal arena ***.'" We agree with defendant. *Burke* applies only where a default results from an insurance agent having taken on responsibilities normally performed by defense counsel. That circumstance does not exist here. For the same reason, we reject plaintiff's argument that *Burke* establishes a "higher standard" for insurance agents. *Burke* was based on the defendant's agent having taken actions normally performed by attorneys, so any higher standard the court may have set in that case would not apply to insurance agents generally.[1]

Plaintiff also refers us to cases in which we have held that a defendant's unexplained failure to take action in response to a complaint is not excusable neglect. Plaintiff

[1] Plaintiff's reliance on *Alliance Corp. v. HBE Corp.*, 149 Or App 593, 944 P2d 982 (1997), is unavailing for similar reasons. In that case, the defendant's default resulted from the defendant's lawyer having failed to calendar a deadline for responding to the summons and complaint, which he had received from the defendant's registered agent. We held that the trial court did not abuse its discretion "in concluding that a lawyer simply forgetting to take steps to ensure a timely response to a summons and complaint is inexcusable neglect." *Id.* at 597. That holding could be viewed as creating some tension with *Wood*, as the defendant's registered agent in *Alliance Corp.* had passed on the summons and complaint to a responsible party after being served with it, a step that *Wood* suggests normally would be sufficient. The cases differ significantly, however, in one respect. In *Alliance Corp.*, the registered agent passed on the complaint to the defendant's *lawyer*, who was the person whose error led to the default, not to a different "responsible subordinate." In this case, Ohara was neither a lawyer nor a person who had taken it upon himself to perform tasks normally performed by an attorney. *Cf. Burke*, 262 Or at 337 (focusing on the negligent insurance adjuster having taken on responsibilities that normally are undertaken by legal counsel). We need not determine, in this case, the extent to which mistakes made by lawyers (or people acting like them) may be treated differently than mistakes made by other professionals. It is enough, for the moment, to note that the distinction provides a basis on which to reconcile the holdings in *Burke* and *Alliance Corp.* with the holdings in other "excusable neglect" cases.

points out that Ohara could not explain why he took no action after having been assigned plaintiff's claim. Under cases like *Mount*, plaintiff argues, Ohara's unexplained failure to act cannot constitute excusable neglect.

That argument overlooks the initial steps that defendant, its registered agent, and other employees of its insurer took to ensure that defendant would timely respond to plaintiff's complaint. The cases in which we have held that inaction (or lack of evidence that action was taken) fails to excuse a default generally have involved cases in which *no* person acting for the defendant took reasonable steps to ensure that an appropriate response would be filed on the defendant's behalf. *See Saldivar*, 240 Or App at 376-77 (the defendant's disregard of the complaint and summons with which he personally was served did not constitute excusable neglect); *Stull*, 187 Or App at 69 (no excusable neglect where the plaintiff's attorney could not explain his failure to respond to the defendant's summary-judgment motion); *Mount*, 103 Or App at 159 (no excusable neglect where the defendant's registered agent could not explain what he had done with a summons and complaint with which he had been served).

Our reason for distinguishing this case from those cited above is that here, several people who were acting on defendant's behalf, and who had responsibility for ensuring that defendant responded to the complaint, took reasonable steps to make that happen, in accordance with established procedures. The fact that Ohara, an "otherwise responsible subordinate employee" of the insurer later failed in *his* duties does not render defendant's failure to appear inexcusable for purposes of ORCP 71 B(1)(a). As we explained in *Wood*, when we consider whether a default was the result of excusable neglect, we focus on the conduct of the primarily responsible person or persons—in *Wood*, the registered agent—and not on the conduct of that person's subordinate employees. 168 Or App at 318. We see no reason that we should treat subordinate employees of insurers different from subordinate employees of registered agents in that regard. Both insurers and registered agents have important responsibilities to ensure that their clients' interests are

protected in litigation. As long as the responsible person takes steps reasonably calculated to ensure that the defendant will timely respond to a complaint, a subordinate employee's later neglect of the matter does not amount to *in*excusable neglect that will defeat an ORCP 71 B(1)(a) motion to set aside a default judgment. Here, defendant itself, defendant's registered agent, and defendant's insurer, through supervisor Spivey, all took such reasonable steps. Accordingly, defendant's default was, as a matter of law, the result of excusable neglect even though Spivey's subordinate employee could not explain the reason he failed to refer plaintiff's complaint to defense counsel. We reject plaintiff's contrary argument.[2]

Affirmed.

---

[2] We reject the additional arguments that plaintiff makes on appeal without discussion.