Submitted on remand from the Oregon Supreme Court December 18, 2013,
affirmed May 21, 2014

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

EBASCO SERVICES, INC.,
fka Esicorp, Inc.; et al,
*Defendants,*

*and*

LEXINGTON INSURANCE COMPANY,
*Defendant-Appellant.*

EECI, INC.,
a Nevada corporation,
*Third-Party Plaintiff,*

*v.*

GENERAL ELECTRIC COMPANY,
a New York Corporation; et al.,
*Third-Party Defendants.*

Clackamas County Circuit Court
CV05120776; A143752

326 P3d 1274

Daniel F. McNeil, Stephen F. Deatherage, and Bullivant Houser Bailey PC filed the opening and reply briefs for appellant. On the supplemental brief were Stephen F. Deatherage and Bullivant Houser Bailey PC.

Brian R. Talcott and Dunn Carney Allen Higgins & Tongue LLP filed the answering brief for respondent. With them on the supplemental brief was Thomas H. Tongue.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

The Supreme Court remanded this case to us to determine whether the default judgment entered by the trial court is void because plaintiff had filed an amended complaint seeking additional relief—attorney fees—without serving defendant Lexington Insurance Company with the amended complaint or, alternatively, whether the trial court erred in denying defendant's motion to set aside the default judgment on the ground of excusable neglect. *PGE v. Ebasco Services, Inc.*, 353 Or 849, 865-66, 306 P3d 628 (2013) (*PGE II*). We conclude that the trial court had jurisdiction to enter judgment on the original complaint and did not err in denying defendant's motion to set aside the judgment. Accordingly, we affirm.

The material facts are not in dispute. Plaintiff settled a personal-injury action brought by a former employee who alleged that he was injured by exposure to asbestos at one of plaintiff's power plants. Plaintiff then sued "Certain Underwriters at Lloyd's London" and "Certain London Market Insurance Companies," which had issued plaintiff insurance policies covering the period during which the asbestos exposure occurred. Plaintiff alleged that the insurers had breached the policies by refusing to indemnify it for the settlement. One of the policies was an excess liability policy providing coverage up to $5 million. Defendant had subscribed to a 16 percent share of the policy, giving it a maximum exposure of $800,000.

Plaintiff's complaint did not specify the amount of money for which plaintiff had settled the asbestos litigation, the monetary loss that resulted from defendant's alleged failure to indemnify plaintiff, or the amount of damages that plaintiff sought to recover. Nor did the complaint allege that plaintiff was entitled to recover its attorney fees.

The policy identified Mendes & Mount, a New York law firm, as an authorized agent for service of process for the subscribing insurers. In 2006, plaintiff served the complaint that initiated this action on that firm. Following its normal procedure, Mendes & Mount contacted Certain Underwriters at Lloyd's London to determine to whom the summons and complaint should be referred for defense. A Certain

Underwriters representative instructed Mendes & Mount to forward the documents to Lane Powell PC, an Oregon law firm, which Mendes & Mount did. In 2007, plaintiff filed an amended complaint that, among other changes, added an allegation that plaintiff was entitled to recover its attorney fees in the action.[1] Plaintiff served the amended complaint directly on Lane Powell. In turn, Lane Powell filed an answer on behalf of the other subscribing insurers, but because it did not represent defendant and had not been instructed to file an answer on defendant's behalf, it did not do so. Nor did it alert defendant that the action had been commenced.

In 2009, plaintiff moved for an order of default and for a limited default judgment against defendant. The trial court granted the motion. In the order of default, the court referred to the original complaint, noting that defendant "was duly and regularly served with the summons and complaint" in 2006. The order makes no reference to the amended complaint. The court entered a limited default judgment awarding plaintiff $800,000 in monetary damages and $26,165.50 in attorney fees. Defendant learned of the default order and judgment shortly thereafter. Nearly six months later, defendant moved to set aside the default order and judgment on grounds of surprise, inadvertence, or excusable neglect.[2]

In support of its motion, defendant submitted affidavits from attorneys with Mendes & Mount and Lane Powell, among others. Defendant did not submit an affidavit from any of its own employees or from any employee of Certain Underwriters.

The trial court denied the motion, stating in its order, "I find no facts to support a conclusion of excusable neglect in the handling of this matter by [defendant], Mendes & Mount, Lane Powell, or Certain Underwriters at Lloyd's, London."

---

[1] Plaintiff later filed another amended complaint that also alleged entitlement to attorney fees and that plaintiff also did not serve on defendant. For purposes of this appeal, there is no material distinction between the two amended complaints, so, for simplicity, we refer to the "amended complaint" without distinguishing between the two pleadings.

[2] In support of its motion, defendant argued that Mendes & Mount was not authorized to accept service on defendant's behalf and that, even if it was, the fact that defendant never received actual notice of the lawsuit provided sufficient grounds for finding excusable neglect. The trial court rejected those arguments, and defendant does not renew them on appeal.

Defendant appealed, raising three assignments of error. It renewed its contention based on excusable neglect but also raised two new arguments. First, defendant argued that the court lacked jurisdiction to enter a default judgment that exceeded the amount prayed for in the complaint. Defendant asserted that the complaint had not specified the amount that plaintiff sought from defendant and, therefore, that the court had lacked jurisdiction to award any damages. Second, defendant contended that the trial court had erred "because the complaint on which the default was entered was superseded by an unserved amended complaint claiming additional relief."

In our first opinion in this case, we agreed with defendant that, because the complaint had not specified the amount of damages that plaintiff sought, the trial court lacked jurisdiction to award any damages and the judgment was, therefore, void. *PGE v. Ebasco Services, Inc.*, 248 Or App 91, 100, 273 P3d 165 (2012) (*PGE I*), *rev'd*, 353 Or 849, 306 P3d 628 (2013). Plaintiff sought review, and the Supreme Court reversed our decision. *PGE II*, 353 Or at 866. The court agreed that the complaint was defective and, consequently, that the judgment violated ORCP 67 C, but it held that the defect in the complaint was apparent on the face of the pleading, that defendant had had ample opportunity to challenge the defect, and, consequently, that the violation of ORCP 67 C was not "jurisdictional" in the sense that entry of the judgment deprived defendant of due process, rendering the judgment void. *Id.* at 864-65. The court remanded the case to us to address defendant's remaining assignments of error.[3] *Id.* at 865.

---

[3] Defendant contends on remand that the Supreme Court did not fully dispose of the first assignment of error. According to defendant, the court held that the trial court had jurisdiction to enter the default judgment but left open whether it was nonetheless plainly erroneous, under ORCP 67 C, for the trial court to do so. That is incorrect. As defendant itself notes, the Supreme Court agreed that the default judgment did, in fact, violate ORCP 67 C. *See PGE II*, 353 Or at 858 ("[W]e conclude that the default judgment violated ORCP 67 C because the complaint did not seek any amount of damages."). But the court further held that the ORCP 67 C violation did not deprive defendant of due process so as to "demand the nullification of the default judgment by means of a collateral challenge." *Id.* at 865. Accordingly, defendant's ORCP 67 C challenge presents no basis for reversing the trial court's denial of defendant's motion to set aside the default judgment.

We begin with defendant's contention that the trial court erred in denying defendant's motion to set aside the judgment for excusable neglect. ORCP 71 B(1) provides, in pertinent part:

> "On motion and upon such terms as are just, the court may relieve a party * * * from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.] * * * The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment."

The party seeking relief must establish that the default was entered through mistake, inadvertence, surprise, or excusable neglect. *Johnson v. Sunriver Resort Limited Partnership*, 252 Or App 299, 308, 287 P3d 1153 (2012), *rev den*, 353 Or 280 (2013). Whether certain conduct or inaction constitutes excusable neglect is a question of law that we review for legal error, but we review the trial court's ultimate decision whether to grant relief for abuse of discretion. *Id.* at 306. However, the trial court's discretion "is controlled by fixed legal principles and must not be exercised arbitrarily, but, rather, it should be exercised to conform with the spirit of [ORCP 71] and not to defeat the ends of substantial justice." *Coleman v. Meyer*, 261 Or 129, 134, 493 P2d 48 (1972).

This case is not on point with any other Oregon appellate case of which we are aware. However, prior cases establish several principles that guide our analysis here. First, to state the obvious, a party seeking relief from a default judgment on excusable-neglect grounds must offer some explanation for the party's failure to appear. *See Lowe v. Institutional Investors Trust*, 270 Or 814, 818-19, 529 P2d 920 (1974) (no abuse of discretion in denying motion for relief from default judgment where the defendant's registered agent had no recollection of having been served, could not find the summons and complaint in the defendant's records, and could not explain why the papers had not reached the defendant's legal department).

Nonetheless, a party's inability to explain precisely what went wrong is not necessarily fatal to a motion to set aside a default judgment. When the fate of the summons and complaint remains unknown, neglect may still

be deemed excusable if the defendant had in place procedures for responding to lawsuits. For example, in *Hiatt v. Congoleum Industries*, 279 Or 569, 569 P2d 567 (1977), the summons and complaint were received by an employee in the defendant's mailroom (who was not the defendant's registered agent). "His instructions were to forward any legal document to the legal department and it was his practice to do so." *Id.* at 574. On the occasion in question, the legal department did not receive the summons and complaint, and the mailroom employee had no memory of the incident and, therefore, could not explain what had happened. The Supreme Court held that those facts established excusable neglect as a matter of law. *Id.* at 577.

This court has since noted the significance of established procedures in showing excusable neglect. In *Knox v. GenX Clothing, Inc.*, 215 Or App 317, 320, 329, 168 P3d 1251 (2007), we affirmed the denial of the defendant's motion to set aside a default judgment, noting that, unlike the defendants in *Hiatt* and other cases, the defendant "did not have a corporate procedure that broke down because of a subordinate's failure to execute that procedure; rather, [the] defendant did not have *any* procedures to respond to lawsuits." (Emphasis in original.)

However, the existence of such procedures does not automatically remedy a failure to explain what went wrong. In *Mount v. Massachusetts Mutual Life Ins. Co.*, 103 Or App 156, 158, 796 P2d 388 (1990), *rev dismissed*, 311 Or 151 (1991), the summons and complaint were served on the defendant's registered agent. He acknowledged having been served but stated that his memory of it was not clear. He averred that, as far as he could recall, he had followed his routine practice, which was to give the summons and complaint to the office manager to forward to the defendant's home office. The office manager stated that she did not recall having received the papers, and individuals at the defendant's home office and its counsel's office indicated that they had received no papers in that case. We concluded that relief from a default judgment was not warranted

> "on a mere showing that the corporate officer or employee who is held out as the agent for service, and who is responsible for setting matters in motion when he receives service,

> cannot say to a probability what he did with the papers and whose speculation that he followed normal procedures is belied by the recollections of other employees that they did not receive the papers."

*Id.* at 159. Thus, the existence of established procedures will not support a finding of excusable neglect if evidence shows that procedures were not followed.

Another factor that courts consider in determining whether neglect is excusable is the level of responsibility of the individuals who dealt with the summons and complaint. A subordinate employee's mishandling of a summons and complaint is excusable if the person with ultimate responsibility for handling the papers gave them "to an ostensibly responsible subordinate with instructions to take necessary steps" and, therefore, it was reasonable for the responsible person to assume that the subordinate would take appropriate action. *Wood v. James W. Fowler Co.*, 168 Or App 308, 318, 7 P3d 577 (2000).

A comparison of *Lowe* and *Hiatt* illustrates the difference that the level of responsibility makes. In both cases, an employee of the defendant received a summons and complaint. Both had a routine practice of forwarding legal documents to the defendant's legal department. In both cases, on the occasion in question, the documents never reached that department, and the employee who had received them had no recollection of the incident and thus could not explain what had gone wrong. In *Lowe*, that employee was the defendant's authorized service agent, who had been personally served with the summons and complaint. 270 Or at 818. In *Hiatt*, the summons and complaint were delivered by the postal service to an employee in the defendant's mailroom. 279 Or at 574. The Supreme Court affirmed the denial of the motion to set aside a default judgment in *Lowe*, 270 Or at 819, but it held in *Hiatt* that the facts established excusable neglect as a matter of law, 279 Or at 577. The court explained the distinction in *Hiatt*:

> "We concluded in *Lowe* that a trial court could reasonably find that it was inexcusable negligence for a corporate agent for service to have lost and have no memory or record of a summons and complaint personally served upon him. We

conclude that is not comparable to having the contents of a letter lost between the mail room and the corporate legal room and the employee of the mail room having no memory of receiving or transmitting the letter or its contents."

*Id.* at 578.

With those principles in mind, we turn to the parties' arguments. Defendant asserts that it established excusable neglect by showing that its service agent, Mendes & Mount, followed established procedures when it received the summons and complaint by contacting Certain Underwriters for instructions and then sending the papers to Lane Powell pursuant to those instructions. Defendant contends that it did enough by explaining that Mendes & Mount received incorrect information from Certain Underwriters about where to send the summons and complaint. Defendant asserts that it need not also have explained why Certain Underwriters's information was erroneous. According to defendant, in determining whether a failure to appear resulted from excusable neglect, the court's focus is solely on the service agent, and, therefore, defendant "need only explain what took place and that its agent's actions were objectively reasonable." Defendant also contends that it is apparent that both Certain Underwriters and Mendes & Mount "mistakenly assumed that all the insurers in the policy group collectively named in the complaint as defendant, including [defendant] Lexington, would be defended by Lane Powell * * *." In defendant's view, it need not adduce "more detail concerning the understanding or motivation of persons outside [defendant's] control * * *."

Plaintiff responds that, to establish excusable neglect, defendant had to explain why Certain Underwriters provided Mendes & Mount with erroneous information. Plaintiff points out that the affidavits that defendant submitted to the trial court do not explain who was making decisions about defendant's legal representation or what that person's instructions were with respect to defendant. According to plaintiff, defendant's failure to establish who made the mistake or why the mistake occurred justified the trial court's denial of defendant's motion to set aside the default judgment.

We first address defendant's contention that, in analyzing excusable neglect, we focus solely on the registered agent. Defendant relies on several cases in which we did indeed focus only on a registered agent's conduct. *See Wood*, 168 Or App 308; *Hackett v. Alco Standard Corp.*, 71 Or App 24, 691 P2d 142 (1984), *rev den*, 298 Or 822 (1985); *Reitz v. Coca-Cola*, 36 Or App 487, 584 P2d 791 (1978). Defendant gives particular emphasis to *Wood*. In that case, the defendant's president and registered agent, Fowler, was personally served with the summons and complaint. *Wood*, 168 Or App at 310. He gave them to the comptroller, Beals, with instructions to forward them to the defendant's insurance agent for defense. Beals's usual practice was to give the summons and complaint to a clerical staffer to mail to the insurance agent, but, for unknown reasons, he did not do so in that case. *Id.* at 311. The plaintiff obtained a default order, and, after the defendant moved to set the order aside, the trial court denied relief.

On appeal, we canvassed a number of cases discussing excusable neglect and drew from them the proposition that, "[w]hen a corporation's registered agent has been personally served and has, in fact, given the summons and complaint to an ostensibly responsible subordinate with instructions to take necessary steps to respond to the complaint, the defendant's failure to appear because of the subordinate's negligence is 'excusable neglect.'" *Id.* at 318. We noted that there was no doubt in *Wood* about what Fowler, who was the defendant's president as well as its registered agent, had done after receiving the summons and complaint and that the "only question [was] with respect to Beals's action[.]" *Id.* We went on to observe that, under the entire line of cases that we had canvassed, "the focus is on the registered agent's conduct—and not on the subordinate's." *Id.* Because Fowler had "neither ignored the complaint nor failed to give adequate direction to his subordinate" but instead "knew what to do and thought that the [subordinate] would do it," the defendant's failure to appear was the product of excusable neglect. *Id.* (internal quotation marks omitted).

Although defendant's focus on *Wood* is understandable, it reads that opinion and the other cited cases too

narrowly. In determining whether a party's failure to appear was the product of excusable neglect, the overarching issue is not whether the *service agent* acted reasonably, but whether the *defendant* acted reasonably. To be sure, in many cases, that analysis has focused on whether one "person acting on the defendant's behalf[] took reasonable initial steps to ensure that an appropriate response would be filed to a complaint, even though the process later broke down." *Johnson*, 252 Or App at 306. But that is because, in those cases, a single person acting on the defendant's behalf bore ultimate responsibility for a significant step in the process of ensuring that the defendant responded appropriately to the complaint, that person acted reasonably in carrying out that responsibility, and the later actions of a subordinate to the person resulted in the default. The holdings in those cases do not mean that, in *all* cases, we consider only whether a single individual took reasonable steps in responding to a complaint. Rather, "we focus on the conduct of the primarily responsible person *or persons*" in determining whether a defendant's neglect was excusable. *Id.* at 311 (emphasis added).

For example, in *Knox*, although the defendant's president was its registered service agent, the CFO had been designated as the person responsible for overseeing lawsuits, and this court analyzed the conduct of the CFO in determining whether the trial court had abused its discretion in denying relief from a default judgment. 215 Or App at 320. Similarly, in *Alliance Corp. v. HBE Corp.*, 149 Or App 593, 595, 944 P2d 982 (1997), after the registered agent forwarded the summons and complaint to the defendant's corporate offices, the defendant's general counsel failed to make a calendar notation of the deadline to respond, resulting in the defendant defaulting. The trial court concluded that counsel's neglect was not excusable, and we affirmed. *Id.* at 597. Our analysis centered entirely on counsel's conduct, not the registered agent's. *See also Burke v. Rachau*, 262 Or 323, 337-38, 497 P2d 1154 (1972) (focusing on an insurance adjuster who took on responsibilities normally undertaken by an attorney). Thus, *Wood* and other cases involving subordinates who mishandled the summons and complaint should not be read to mean that our analysis ends

if we conclude that the service agent was not negligent or that any neglect by the service agent (or any other single person) was excusable.[4] We also consider the conduct of other individuals with ultimate responsibility for some aspect of ensuring that the defendant responds to litigation.

*Johnson* illustrates the point. In that case, the summons and complaint were served on the defendant's registered agent, which forwarded them to the defendant. *Johnson*, 252 Or App at 301. One of the defendant's employees sent copies to the claims adjuster for the defendant's insurer with instructions to obtain counsel and file an answer. *Id.* at 301-02. The claims adjuster notified her supervisor, who was responsible for overseeing claims. *Id.* at 302. The supervisor directed an administrative employee to transfer the case to a different claims adjuster for litigation, which she did. The second claims adjuster was familiar with the insurer's procedures for responding to litigation, but, for reasons that he could not explain, he failed to refer to case to counsel, and the plaintiff obtained a default judgment. *Id.* at 303. In analyzing the defendant's assertion of excusable neglect, we reviewed each step in the defendant's handling of the summons and complaint, noting that the defendant's registered agent, the defendant itself, and the insurer's claims supervisor had all acted reasonably in response to receiving the summons and complaint. *Id.* at 312. Because the case was neglected only when it was assigned to the second claims adjuster—a subordinate of the supervisor with responsibility for overseeing claims—we concluded that the neglect was excusable. *Id.*

*Johnson, Knox, Alliance Corp.,* and *Burke* make clear that our excusable-neglect analysis takes into account the actions of all individuals who bear ultimate responsibility for some aspect of responding to litigation, whether it is the service agent, a corporate officer with responsibility

---

[4] It comes as no surprise that many of our cases focus on the registered agent, given that, in cases involving corporate defendants, the registered agent is often the first person with notice of the lawsuit and, in many cases, is also an officer of the corporation with responsibilities that go beyond merely forwarding legal papers to whomever is responsible for overseeing litigation. *See, e.g., Wood,* 168 Or App at 310 (the defendant's registered agent was also its president); *accord Hackett,* 71 Or App at 32; *Reitz,* 36 Or App at 489-90.

for overseeing lawsuits, the responsible claims supervisor at the defendant's insurer, the defendant's attorney, or other individuals with similar responsibilities. To analyze excusable neglect, a court must consider the totality of the circumstances surrounding the defendant's failure to respond to the complaint or other filing, and that may often require the defendant to establish who the responsible individual was at each significant step in the defendant's efforts to respond to litigation and what those individuals did. *Cf. Johnson*, 252 Or App at 301-03 (identifying each person who had handled the summons and complaint, each person's level of responsibility, and the actions that each person had taken). We therefore reject defendant's assertion that, to establish excusable neglect, it needed to show only that Mendes & Mount acted reasonably because, in all cases, establishing the reasonableness of a service agent's actions is enough.

In any event, defendant has not shown that Mendes & Mount acted reasonably. The declaration that defendant obtained from a Mendes & Mount attorney states only that, consistently with its normal procedures, the law firm contacted a representative of Certain Underwriters to determine to whom the summons and complaint should be referred for defense, and that, "[a]t the representative's instruction, * * * Mendes & Mount sent the Summons and Complaint to the law office of Lane Powell[.]" Neither that declaration nor anything else in the record explains what obligations Mendes & Mount had to *this* defendant or whether Mendes & Mount sought instructions from Certain Underwriters specifically as to *this* defendant. Defendant asserts that it is apparent that both Mendes & Mount and Certain Underwriters mistakenly assumed that Lane Powell would represent defendant along with all of the other subscribers, but, on this record, cannot determine whether it was reasonable for Mendes & Mount (or Certain Underwriters, for that matter) to make that assumption.

And therein lies the problem for defendant: It has not established who *was* responsible for selecting legal representation for defendant as a subscribing insurer, whether the decision had actually been made, or, if it was, why erroneous information reached Mendes & Mount. It is clear that

*someone* made a mistake, but, as our above review of prior cases illustrates, not all mistakes are created equal. A number of factors influence the determination of whether the default judgment was the product of excusable neglect, and questions pertinent to that determination remain unanswered. Who made the mistake that led to the summons and complaint being sent to a law firm that did not represent defendant? What was that person's level of responsibility? Did defendant have established procedures for selecting legal representation and for informing Certain Underwriters of any changes in representation? Were those procedures followed? In light of defendant's failure to offer evidence addressing those questions, it did not meet its burden to establish that any neglect in responding to plaintiff's complaint was excusable. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to set aside the default judgment.

We turn to defendant's remaining assignment of error. Again, defendant asserts that the trial court erred by not setting aside the default and default judgment, "because the complaint on which the default was entered was superseded by an unserved amended complaint claiming additional relief." Defendant relies on ORCP 23 A, which provides, in part:

> "Whenever an amended pleading is filed, it shall be served upon all parties who are not in default, but as to all parties who are in default or against whom a default previously has been entered, judgment may be rendered in accordance with the prayer of the original pleading served upon them; and neither the amended pleading nor the process thereon need be served upon such parties in default unless the amended pleading asks for additional relief against the parties in default."

According to defendant, an amended complaint supersedes the original complaint and, if an amended complaint seeks additional relief, "it becomes the operative complaint for default purposes and must have been served before a default may be taken." Because the amended complaint in this case sought attorney fees that plaintiff did not request in the original complaint, defendant takes the position that the amended complaint was the operative pleading. In

defendant's view, because plaintiff did not serve it with the amended complaint, plaintiff forfeited the ability to seek a default or a default judgment.

Plaintiff responds that the amended complaint did not seek any new relief and, therefore, did not supersede the original and did not need to be served on defendant, for two reasons. First, plaintiff asserts that the service requirement in ORCP 23 A applies only to new or changed "claims for relief," which, according to plaintiff, does not include a request for attorney fees. Second, plaintiff contends that, even if an attorney-fee award does constitute additional relief, the original complaint adequately pleaded attorney fees because it included all of the facts necessary to support an attorney-fee award. Plaintiff also argues that the second assignment of error is unpreserved and that we should not address it because plaintiff did not have an opportunity to develop a record on the question whether, notwithstanding plaintiff's failure to serve defendant with the amended complaint, defendant had received actual notice of the attorney-fee request.

We reject defendant's argument that the original complaint was superseded—as to defendant—at the moment that plaintiff filed the amended complaint, although for reasons different from those articulated by plaintiff. In support of its position that the filing of the amended complaint rendered the original complaint a nullity, defendant cites *Kowalski v. Hereford L'Oasis*, 190 Or App 236, 243, 79 P3d 319 (2003), *rev den*, 336 Or 597 (2004), in which we stated, "The original complaint in this action was superseded by the filing of the amended complaint." But in that case, the original complaint had not been served on the defendants when the plaintiff filed the amended complaint. Moreover, that case did not involve a dispute about whether it was the *filing* of the amended complaint or its *service* that resulted in the new pleading superseding the one that came before it. Thus, our statement in *Kowalski* does not answer the question presented here: whether an amended complaint that has been filed *but not yet served* on a defendant supersedes the original complaint *that was served on the defendant* as to the claims against that defendant.

In short, *Kowalski* should not be read to stand for a blanket proposition that the original complaint is superseded upon the filing of an amended complaint in all circumstances. Indeed, that proposition would contravene codified procedural rules. ORCP 23 A expressly provides that, in at least one circumstance, the filing of an amended complaint alone does *not* trigger total supersedure of the original complaint. If the amended complaint does not seek additional relief against parties in default, "judgment may be rendered in accordance with the prayer of the original pleading served upon them[.]" Of course, the next clause of ORCP 23 A provides that "neither the amended pleading nor the process thereon need be served upon such parties in default unless the amended pleading asks for additional relief against the parties in default." The question is whether judgment may be rendered on the original pleading if an amended pleading asking for additional relief against parties in default is not served on those parties. Neither ORCP 23 A nor any other rule, statute, or Oregon appellate decision answers that question.

Although the question is novel in Oregon, courts in other jurisdictions have considered it. Some hold that, when the plaintiff files an amended complaint, the plaintiff must be deemed at that point to have abandoned the original claim asserted against the defendants. In *Hutchins v. Priddy*, 103 F Supp 601, 606 (WD Mo 1952), for example, the court reasoned that, "[s]o long as said amended complaint remained on file, it proffered the only claim that could be demanded or litigated as to said defendants." Accordingly, the court had "lost all power that it might previously have had to proceed to final judgment over the original claim as made against said defendants." *Id.*

Other courts have concluded that an amended pleading does not supersede the original until the amended pleading has been served. In *Int'l Controls Corp. v. Vesco*, 556 F2d 665, 668-69 (2d Cir 1977), *cert den*, 434 US 1014 (1978), the court addressed the issue as follows:

> "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect. Of the authorities stating this rule, however, none

focuses on the point in time at which the superseding of the original by the amended complaint occurs. Appellant argues that the critical point is the filing of the amended complaint, while appellee argues, and the court below held, that the original complaint is not superseded until the amended complaint is served. We agree with the court below, at least where, as here, the amended complaint is required to be served under [FRCP] 5(a).

"It is the rule in this circuit that, 'after the filing of (an initial) complaint, the action remains pending in an inchoate state until service is completed . . ..' *Messenger v. United States*, 231 F2d 328, 329 (2d Cir 1956); *see* 2 Moore's Federal Practice P 4.09, at 1024-25 (2d ed 1975). This rule implies that an amended complaint, at least one that must be personally served pursuant to Rule 5(a), is also in an 'inchoate state' until served. It would make little sense to hold, as appellant urges, that a complaint in such a state supersedes a properly served complaint. Such a holding would leave a case in a state of suspended animation in the interim between filing and service of the amended complaint, with the court perhaps even lacking personal jurisdiction over the defendant.

"Such a holding would also introduce a substantial risk factor into a plaintiff's decision whether to amend his complaint. A plaintiff considering amendment would have to evaluate the likelihood that the amended pleading could actually be served on the defendant or defendants. If it appeared that such service on even one defendant would be difficult as was clearly the case here, where ICC had had great difficulty serving its original complaint on Vesco the plaintiff might well have to decide not to file an amended complaint, since failure to serve it would, under the rule urged by appellant, leave the plaintiff, which had once had an effective complaint (the original), without any remaining effective complaint on which it could obtain judgment. It seems plain that the introduction of such a consideration into the decision whether to amend, requiring the plaintiff in effect to gamble on the likelihood of obtaining service, would discourage amendments and thus would be inconsistent with the amendment policy underlying the federal procedural system. Accordingly, in the circumstances of this case, we cannot hold void the judgment entered on the original complaint."

(Footnote and some citations omitted.)

We cannot adopt the reasoning enunciated in *Hutchins*—that a party abandons the previous pleading by filing an amended one and the court loses authority to enter judgment based on the original pleading—because it is inconsistent with ORCP 23 A, under which the original complaint retains vitality in at least some cases. On the other hand, the reasoning in *Vesco* is persuasive and consistent with our established procedural rules. An action is commenced in Oregon when the complaint is filed, ORCP 3, but the court lacks authority to act on the complaint until the defendant is served with the summons and complaint, ORCP 4; ORCP 5; *Nelson v. American Home Mortgage Servicing, Inc.*, 249 Or App 555, 558, 278 P3d 89 (2012), or the defendant waives service, ORCP 6; ORCP 21 G(1), which is consistent with the idea that an action remains pending in an inchoate state until service is completed. It stands to reason that, if the original complaint remains inchoate until served, subsequent pleadings also do not become operative until served.

Because defendant was not served with the amended complaint in this case, we conclude that the original complaint was not superseded as to defendant. It follows that the trial court had jurisdiction to enter judgment on the original complaint. We reject defendant's argument to the contrary.[5]

Affirmed.

---

[5] We note that defendant did not argue below, and does not argue on appeal, that—assuming the trial court had jurisdiction to enter a default judgment on the original complaint—it nonetheless erred by including an attorney-fee award in the default judgment. Accordingly, we do not further address that aspect of the default judgment.